ANSEL R. DOTEN v. ÆTNA INSURANCE COMPANY OF HARTFORD.

October 26, 1899.

Nos. 11,570—(7).

### Fire Insurance—Laws 1895, c. 175, § 53.

The clause in Laws 1895, c. 175, § 53 (the insurance law of this state), which provides that, if the insured premises "shall become vacant by the removal of the owner or occupant and so remain vacant for more than thirty days without such assent" of the insurer, the policy shall be void, is not affected, qualified, or modified by the clause in section 25 which provides that in the absence of any change increasing the risk without the consent of the insurer, and in the absence of intentional fraud on the part of the insured, in case of total loss the whole amount mentioned in the policy or renewal upon which the insurer receives a premium shall be paid.

### Same—Insured Premises Vacant without Consent of Insurer.

Therefore an answer in an action brought upon such a policy in which it is alleged that the insured premises (a dwelling house) became vacant by the removal of the insured, were vacant when destroyed by fire, and had been so vacant for more than 30 days prior thereto, without the assent of the insurer, states a good defense. It is not necessary to further allege that the change in condition increased the risk.

Action in the district court for Hennepin county to recover $2,500 on a fire insurance policy. From an order, Simpson, J., sustaining a demurrer to the answer, defendant appealed. Reversed.

*Kitchel, Cohen & Shaw,* for appellant.

The parts of Laws 1895, c. 175, § 25, directing the amount to be paid in case of total or partial loss must be construed in connection with the standard policy provisions of the same act as a valued policy law in respect to buildings totally destroyed. Every part of the statute must be considered in connection with the whole, so as to give effect to every part. Stevens v. City of Minneapolis, 29 Minn. 219; Endlich, Interp. St. §§ 23, 35, 40; McNamara v. Minnesota Central Ry. Co., 12 Minn. 269 (388). If there be irreconcilable repugnancy between section 25 and section 53, the earlier section is inoperative. This is the ancient rule. Case of Woods, 1 Coke, 40b,

47a; Federalist, No. 78; Packer v. Sunbury, 19 Pa. St. 211; Brown v. County, 21 Pa. St. 37; Harrington v. Trustees, 10 Wend. 547; Gibbons v. Brittenum, 56 Miss. 232; State v. Heidorn, 74 Mo. 410; Branagan v. Dulaney, 8 Colo. 408; Albertson v. State, 9 Neb. 429; Ex parte Hewlett, 22 Nev. 333; Sedgwick, St. L. 104; Potter's Dwarris, St. 156; Endlich, Interp. St. § 183; Sutherland, St. Const. § 220. A second rule is given, that the conflict being irreconcilable, both clauses are void. Sutherland, St. Const. § 220. But for this rule there is no decision. A third rule is, that preference should be given to that section which harmonizes with other laws and the justice of the case. Bishop, Written Law, § 64; Farmers v. Hale, 59 N. Y. 53; Kansas v. Commissioners, 16 Kan. 587; Sams v. King, 18 Fla. 557. Whichever alternative is chosen, section 25 must be rejected. The Ohio decisions do not control and are not even persuasive. The rule that adopts the settled construction of a law taken from another state is not to be followed under all circumstances. Whitney v. Fox, 166 U. S. 637; In re St. Paul & N. P. Ry. Co., 37 Minn. 164; Nicollet Nat. Bank v. City Bank, 38 Minn. 85.

*Cobb & Wheelwright,* for respondent.

The purpose of the insurance act of 1895 is threefold: (1) To impose on the insurer the obligation of examining the property in advance of issue of the policy, with a view to determining its insurable value and fixing its amount in the policy, which amount is made conclusive on all parties in case of loss. (2) To exclude as a defense to an action on the policy any change in the ownership or physical condition of the premises, in the absence of increase of risk or intentional fraud of the insured. (3) To place the burden of proof, in the absence of fraud, on the insurer to show that the change of ownership or condition increased the risk. The portion of section 25 under consideration is a literal transcript of an Ohio statute (See R. S. Oh. §§ 2643, 2644), which has been construed by the courts of that state. Insurance v. Leslie, 47 Oh. St. 409; Moody v. Insurance, 52 Oh. St. 12; Sun v. Clark, 53 Oh. St. 414; Webster v. Dwelling, 53 Oh. St. 558. See also Cannell v. Phoenix, 59 Me. 582; Thayer v. Providence, 70 Me. 531; Lancy v. Home, 82 Me. 492; White v. Phoenix, 83 Me. 279; Chamberlain v. New Hampshire, 55 N. H.

249; Pennsylvania Mut. L. Ins. Co. v. Mechanics Savings Bank & T. Co., 72 Fed. 413, 418.

COLLINS, J.

This is an action upon a policy of insurance by the terms of which defendant insured plaintiff against loss or damage by fire, to the amount of $2,500, on a dwelling house. It is alleged in the complaint that the insured premises were totally destroyed by fire on July 16, 1898, and this allegation, together with all others in the complaint, is admitted by the answer. Vacancy of the insured premises at the time of the fire, and for more than 90 days prior thereto, contrary, as it is claimed, to the terms of the policy, is alleged by way of defense. Counsel for plaintiff interposed a general demurrer to the answer, the precise point being that it failed to allege that the vacancy increased the risk, or that the insured was at any time or in any manner guilty of any intentional fraud. The demurrer was sustained in the court below.

A determination of defendant's appeal calls for a construction of certain provisions found in Laws 1895, c. 175,—an act to revise and codify the insurance laws of this state. That the provisions in question are difficult to bring into harmony will be apparent as we proceed. To sustain their position, plaintiff's counsel rely upon portions of section 25. This section requires of the insurer an examination of any building to be insured, a full description to be made, the insurable value to be fixed, and the amount of this value to be stated in the policy. Then follows this clause:

"In the absence of any change increasing the risk, without the consent of the insurer, and in the absence of intentional fraud on the part of the insured, in case of total loss the whole amount mentioned in the policy or renewal upon which the insurer receives a premium shall be paid."

Following this language are provisions relating to payment in case of a partial loss, or payment where there are two or more policies upon the same property; and it is then provided that,

"In the absence of fraud, the burden of proof to show an increase of risk by reason of any change in the ownership or condition of the structure or building upon which insurance is effected, either before

or after loss arises, shall be upon the insurer; anything in the application or the policy of insurance to the contrary notwithstanding."

It is argued that, because of the first above quoted portions of section 25, it was incumbent upon defendant to allege and prove that the risk which it had assumed was increased by reason of the house becoming vacant subsequent to the issuance of the policy.

With the exception of the proviso last above quoted, those portions of section 25 relied upon by plaintiff's counsel seem to have been taken from an Ohio statute (Act March 5, 1879). This act consisted of but two sections, and the one now under consideration had been construed by the supreme court of that state prior to its adoption by the legislature of this state. Insurance v. Leslie, 47 Oh. St. 409, 24 N. E. 1072; Moody v. Insurance, 52 Oh. St. 12, 38 N. E. 1011. Afterwards it was before the Ohio court in two cases. Sun v. Clark, 53 Oh. St. 414, 42 N. E. 248; Webster v. Dwelling, 53 Oh. St. 558, 42 N. E. 546. Of these Ohio cases, that of Moody v. Insurance Co. is probably most in point, as sustaining the contention of plaintiff's counsel; and, if the well-known rule as to a settled construction of an adopted law were applicable here, we would feel obliged to hold the demurrer well taken. But the fact is that there are other parts of chapter 175 which must also be construed in connection with the clause found in section 25. When the Moody case was decided, and when the language under consideration was borrowed, various provisions of that enactment, as the same are prescribed in section 53, were no part of the insurance law of the state of Ohio. The greater portion of chapter 175 was original legislation, and therefore a settled construction of any one clause which happened to be adopted from a sister state cannot be allowed to wholly control. If it were, the general rules which govern when construing a statute as a whole would be disregarded and ignored.

It must be admitted that the intention of the lawmakers when enacting chapter 175 was to provide a uniform contract to be used by all fire insurance companies engaged in business within our state,—a contract which in some particulars could not be departed from or evaded even by the concurrence of the parties thereto. The principal feature seems to have been what is known as the

"valuation clause"; thus imposing upon the insurer the obligation to examine the property in advance, to fix the insurable value, and, in case of the total destruction of a building, to abide by the fixed value when settling the amount of the loss.   This appears from the law itself,—more particularly in section 53, in which it is provided that the standard form shall be plainly printed in type no smaller than long primer "and shall be as follows, to wit"; the form then being given in full.   It is also declared in the same section that no company

"Shall issue fire insurance policies on property in this state other than those of the standard form herein set forth."

Among the clauses found in this prescribed form are the following, which, standing alone, would seem to be very clear and intelligible:

"The policy shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured, or if the assured now has or shall hereafter make any other insurance on the said property without the assent of the company, or if, without such assent the said property shall be removed, except that, if such removal shall be necessary for the preservation of the property from fire, this policy shall be valid without such assent for five days thereafter, *or if, without such assent, the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency or consent of the insured, be so altered as to cause an increase of such risks, or if, without such assent, the property shall be sold or this policy assigned, or if the premises hereby insured shall become vacant by the removal of the owner or occupant, and so remain vacant for more than 30 days without such assent,* or if it be a manufacturing establishment, running in whole or in part extra time, except that such establishment may run in whole or in part extra hours not later than nine o'clock p. m., or if such establishment shall cease operation for more than 30 days without permission in writing endorsed thereon, or if the insured shall make any attempt to defraud the company, either before or after the loss, or if gunpowder or other articles subject to legal restriction shall be kept in quantities or manner different from those allowed or prescribed by law, or if camphene, benzine, naphtha or other chemical oils or burning fluids shall be kept or issued by the insured on the premises insured, except that what is known as refined petroleum, kerosene or coal oil, may be used for lighting, and in dwelling houses kerosene oil stoves may be used for domestic purposes, to be filled when cold, by daylight, and with oil of lawful fire test only."

We have italicised a part of these provisions, that special attention may be drawn to the language used; and it is the claim of defendant's counsel that as the insurer shows the building to have been occupied when insured, to have been vacated thereafter, and to have been vacant and unoccupied at the time of its total destruction by fire and for more than 100 consecutive days immediately prior thereto, with the assent of the insured, but without the assent of the insurer, the policy itself became void, in accordance with its express and authorized terms, and without regard to whether or not the risk, as originally assumed, had been increased by the change of conditions. Stated concisely, the claim of plaintiff's counsel, in opposition, is that the limitation and language relating to the absence of any change increasing the risk, found in section 25, should be read into section 53, and into all policies issued in accordance with the form fixed thereby. The question is, can the entire act be so construed, having in mind that it is a remedial statute, to be construed liberally for the suppression of the mischief and the advancement of the remedy? The question is a difficult one, as before stated, and the conclusion reached not wholly free from doubt; but, after careful examination of the entire act, we have concluded that the order of the court below must be reversed.

Evidently the clause in section 25 which we are asked to incorporate into the standard form of policy is incomplete and open to criticism. It merely provides that in the absence of any change increasing the risk, to which change the insurer has not assented, the amount fixed in the policy shall be paid in case of a total loss. It is not expressly so stated, but the inference is that, if there has been a change which has increased the risk, the amount of the loss is to be ascertained as is the amount in case of partial loss. Does this mean that, if the change is one for which the insured is not responsible, the fixed valuation is not to govern? This seems to be the view of counsel for both parties, but we are not required to determine that question in the present case. It is to be noticed, however, that a part of the italicised quotation from section 53 also refers to changes in the situation or circumstances which cause an increase in the risk. Construing these words strictly and by them-

selves a policy is wholly invalidated if this change occurs by or with the knowledge, advice, agency, or consent of the insured, and without the assent of the insurer. So we find two distinct provisions in the law in respect to a change of condition or situation, which change increases the risk. In the one case, and under the provision found in section 25, the penalty, in case of such a change, is to deprive the insured of the benefit of that portion of the policy which fixes the amount of the loss, if total, while in the other, and in accordance with the form of policy prescribed in section 53, the penalty is much more drastic, for the protection is entirely swept away.

It may be impossible, when we consider the remedial character of the act of 1895, to construe either of these provisions exactly as they are written; but, as we look at the entire act, it is not necessary to place a construction upon the language found in section 25. It is of doubtful meaning when taken in connection with various other provisions found in the law, and there are other provisions equally as ambiguous,—for instance, section 20. But by the express and emphatic language found in section 53 the only policy to be issued is that plainly prescribed, in form not to be misunderstood. Every person reading the language there used will understand that the policy is to be void for stated reasons, and when certain conditions exist. It is to be void if the insured premises are vacated by the removal of the owner or occupant, and the vacancy continues for more than 30 days, without the assent of the insurer. There is no obscurity in the wording. No one could be misled by it, and its enforcement as a part of the contract will work no hardship; for the insured has notice if it, and may easily protect himself against loss. We assert that if an ordinary layman should first read the insurance law, and then read a standard-form insurance policy, he would say, without the slightest hesitation, that the policy became void upon the removal of an owner or occupant from an insured building, and a continuous vacancy for a period exceeding 30 days.

We are not authorized to amend, by construction or otherwise, so distinct a provision of the law as is that which declares the policy void in the event of a removal and a continued vacancy. The policy is also to be void for other stated reasons, and if the provision found

in section 25 is to be read into it, under any conditions, there would be no point at which we could halt and say that it had no application. Other insurance would not avoid the policy, if there was no increase of risk. The keeping of gunpowder, dynamite, nitro-glycerine, or other highly dangerous articles on the premises would not render the policy void, nor would it prevent recovery in case of loss, if such keeping did not increase the risk. And, according to the views of plaintiff's counsel, there would be no increase of risk unless it conduced to the loss in a direct manner. If the fire originated elsewhere, and the insured building was destroyed as a result, and not because of any change of its condition, the policy would still be valid. Every one of the conditions prescribed in section 53 to be incorporated into the policy would be swept away. All might exist, but the policy would still be valid; its validity not being determined as a question of law from plain and unambiguous language, but wholly as a question of fact, after section 53 and the policy itself are supplemented with a clause from section 25 which, to put it mildly, is of doubtful meaning.

Whatever may be said of other parts of the 1895 act, it seems clear to us that the provisions which prescribe what the form of a standard policy shall be, and exactly what it shall contain, and under what circumstances it shall become void, received very careful and considerate attention at the hands of the legislators. These provisions we cannot wipe out by a forced and unnatural construction of a phrase of doubtful import found in another part of the act. We therefore hold that the clause in section 53 which provides that, if the insured premises "shall become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without such assent" of the insurer, the policy shall be void, is not affected, qualified, or modified by the clause in section 25 which provides that, in the absence of any change increasing the risk without the consent of the insurer, the whole amount mentioned in the policy or renewal upon which the insurer receives a premium shall be paid in case of a total loss.

The defense as set forth in the answer was sufficiently pleaded, and the order sustaining plaintiff's demurrer is reversed.

77 M.—31

MITCHELL, J.

I concur in the result, without committing myself to any theory as to the construction or application of section 25, except the single proposition that the expression, "increasing the risk," found in that section, cannot be read into section 53 so as to add to, take from, limit, or qualify its positive and unconditional provisions as to what the standard policy may or may not contain, or as to what shall or shall not avoid the policy.

I think that, when section 53 provides that a policy shall be void if the insured premises "shall become vacant by the removal of the owner or occupant and so remain vacant for more than 30 days without such assent" of the insured, it means just what it says, and that there is no permissible rule of construction under which we can add to or read into this the words "provided such vacancy increases the risk." As suggested in the opinion, if we read this into the provision as to vacancy, we would have to read it into every other analogous provision of section 53. I do not see that the cases cited by plaintiff are authority for any general principle or proposition, except the self-evident one that, if provisions are incorporated into a policy which are in conflict with the statute on the same subject, such provisions are void, and the statute applies. The statute which the supreme court of Ohio construed in the cases relied on by the plaintiff consisted exclusively of what is now section 25 of our statute. But our statute contains in section 53 an express and specific provision as to the effect of vacancy upon the policy. I may add that in my judgment there is no ground for claiming that the expressions "changing the risk" or "increasing the risk" are synonymous with "causing or contributing to the loss," and the Ohio cases lend no support to any such claim. The two expressions are used in entirely different senses in insurance law and insurance contracts.