*685 OPINION.
Littleton:
The Commissioner included the total of the use and occupancy insurance, amounting to $80,000.10, in the petitioner’s gross income for 1918, and contends that his action in this regard should be approved for the reason that the use and occupancy policies insured profits prevented by the fire. On the other hand, the petitioner contends that the use and occupancy insurance was per diem compensation, that is, a fixed sum for each day of enforced idleness and proportionately for partial idleness, and that the settlements between the insurers and the insured were on that basis; that neither the policies nor the settlement were upon the basis of profits prevented ; that no part of the $80,000.10 was taxable income for 1918 as there was no enforced idleness, either total or partial, during that year, and that the difference between the amount expended to restore the building and the reserve supply of cured straw should not be treated as income for the calendar year 1918 but should be allocated to the calendar years 1919 and 1920.
Section 3318, Minn. Gen. Stats., 1913, prescribes a standard form of insurance policy and expressly authorizes use and occupancy insurance to be inserted in such standard form of policy, but forbids *686 the inclusion of any clause not so authorized. The use and occupancy insurance in question was written in that manner, the provisions having been made a part of each policy as a rider. The statute does not specifically authorize insurance against profits prevented. The use of the standard form of policy is compulsory. With such changes as are specifically authorized by statute, it is the only form of insurance contract which may lawfully be used in the State. Heim v. American Alliance Ins. Co., 147 Minn. 283; 180 N. W. 225; Brecher Furniture Co. v. Firemen's Ins. Co., 154 Minn. 446; 191 N. W. 912.
The Board is of the opinion from the evidence that this proceeding, as far as it relates to the nature of the use and occupancy policy, is the same as that in the Appeal of Piedmont-Mt. Airy Guano Co., 8 B. T.A. 1009, and that such of the amount of the use and occupancy insurance money as is equal to the amount actually expended by the petitioner to replace the warehouse destroyed by fire without added capacity or other elements of additional value and the amount expended to replace the contents thereof, in excess of the ordinary fire insurance collected thereon, should be deducted from the amount received as use and occ'upancy insurance. See Appeal of Cotton Concentration Co., 4 B. T. A. 121.
Section 234 (a) (14) of the Revenue Act of 1921 provides as follows:
If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, * * *; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, * * * or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross» income under prior income, war-profits and excess-profits tax Acts.
Article 49 of Regulations 45, relative to the situation covered by the above section, is in part as follows:
In the case of property which has been lost or destroyed in whole or in part through fire, * * * the amount received by the owner as compensation for the property may show an excess over the value of the property on March 1, 1913, or over its cost, if it was acquired on or after that date (after making proper provision in either case for depreciation to the date of the loss, damage, or transfer). The transaction is not regarded as completed at this stage, however, if the taxpayer proceeds immediately in good faith to replace the property, or if he makes application to establish a replacement fund as provided in the following article. In such a case the gain, if any, is measured *687 by the excess of tbe amount received over tbe amount actually and reasonably expended to replace or restore tbe property substantially in kind, exclusive of any expenditures for additions or betterments. Tbe new or restored property effects a replacement in kind only to tbe extent that it serves tbe same purpose as tbe property which it replaces without added capacity or other element of additional value. * * *
Applying the provisions of section 234 (a) (14) and the Regulations as construed in the Appeal of Cotton Concentration Co., supra, we find that the petitioner expended $13,133.78 for the four units of the new warehouse, the replacement of the old fire-wall, and the construction of the additional fire-wall as follows:
For tbe four warehouse units, Nos. 2, S, 6 and 7-$51, 059. 36
For the reconstruction of the old fire-wall (No. 4)_ 9,376.45
For the construction of the additional fire-wall (No. 6)_ 11,797.97
Total_ 73,133. 78
From the above sum there should be eliminated the cost of the added capacity of the new warehouse and the cost of the additional fire-wall. The capacity of the old warehouse was 83 per cent of the capacity of the new, and that percentage of the cost of the new units is $43,126.26. Eliminating the additional fire-wall costing $11,797.97, and including the old fire wall replaced at a cost of $9,376.45, we have a total of $52,502.71 of the warehouse replacement cost compensable out of the total insurance received. There was ordinary fire insurance on the destroyed warehouse in the amount of $20,000, leaving $32,502.71 of the warehouse replacement cost compensable out of the use and occupancy insurance.
What has been said relative to the replacement of the destroyed warehouse applies also to the replacement of its contents, and such amount of the use and occupancy as is equal to the additional cost of replacing the petitioner’s reserve of cured straw, that is, the excess of the ordinary fire insurance collected thereon, should be deducted from the use and occupancy insurance.
There were destroyed 6,601 tons of straw for which the petitioner received on its ordinary fire insurance policies sums aggregating $85,813.50, which was at the rate of $18 per ton. Immediately after the fire the petitioner began efforts to restore its reserve of straw but was unable to do so until the crop year commencing September 1, 1919. It was unable to recoup any of the reserve out of the 1918 crop. The average cost to the petitioner of the straw purchased from the 1919 crop was $17,223 per ton. The increased cost was the difference between $13 and $17,223 or $4,223 per ton, which, on 6,601 tons, equals $27,876.02. That amount of the use and occupancy insurance money should not therefore be regarded as taxable gain, but should be allocated to the cost of restoring the straw.
*688 The petitioner further contends that the remainder of the use and occupancy insurance, amounting to $19,621.37, should be deferred or allocated proportionately to the calendar years 1919 and 1920, in which it is claimed occurred the interruption of operations which the insurance was intended to compensate. This contention might have weight if the $80,000.10 represented reimbursements for profits pi'evented, as was the situation in the Appeal of International Boiler Works Co., 3 B. T. A. 283, but we have already held that under these policies the thing insured was not the possibility of profits or losses, nor profits which might be earned during 1918 or any future time, but the amount paid represented compensation to the petitioner for the right to use and enjoy the property for any purpose to which the company might be able to devote it; the sum of the ordinary fix’e insurance and the use and occupancy insurance represented nothing more than compensation for loss of the useful value of the building and its contents to the petitioner in its business. In these circumstances, we do not find merit in the petitioner’s claim that a portion of the amount received in final settlement in 1918 over the amount required to replace the physical property should be spread over subsequent years. Section 213 (a) of the Revenue Act of 1918 provides that the term “ gross income ” includes, among other items, “ gains or profits and income derived from any source whatever,” and that “ the amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period.” Section 212 (b) provides that the net income shall be computed upon the basis of the taxpayer’s annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. The petitioner regularly employed the accrual method of accounting in keeping its books and, in the opinion of the Board, such method cleai’ly reflected the income. We are not warranted, therefore, under the statutes in adopting the method of computing income for 1918 which will exclude therefrom the amount of insurance received and allocate same to subsequent years. The statute contemplates that items of income and deductions shall be treated consistently. Had the property destroyed in 1918 not been insured, a loss would have been sustained which could not under the Revenue Act of 1918 have been accounted for as of a different taxable year, and, since it can not be said that the method of accounting employed did not *689 clearly reflect the income, we must hold that the excess of the insurance over the amount required to restore the property was income in 1918. This was no less income in 1918 because received in the form of insurance than it would have been had it resulted from a voluntary sale of property for an amount in excess of the cost or March 1, 1918, value thereof.
Judgment will be entered on 15 days' notice, under Bule 50.
Phillips concurs in the result only.