REILLY and others vs. THE FRANKLIN INSURANCE COMPANY OF ST. LOUIS.

INSURANCE AGAINST FIRE. *(1) Measure of damages under ch. 347 of 1874, in case of total loss. (2) Stipulations in policy for a different measure of damages, invalid.*

1. Ch. 347 of 1874 provides that where real property, in this state, insured against fire, shall be totally destroyed by fire without criminal fault of the assured, the amount of insurance written in the policy "shall be taken and deemed to be the true value of the property at the time of such loss, and the amount of the loss sustained," and as the measure of damages. *Held,* that, in an action upon a policy issued since the statute took effect, in a case coming within its terms, the amount of insurance written in the policy is *conclusive* as to the amount of the damages (if any) for which the insurer is liable by reason of the loss.

2. As the statute rests upon grounds of *public policy,* the conclusive effect of the amount of insurance written in the policy upon the measure of damages, is not altered by a stipulation in the same instrument that the damages should be established "according to the true and actual cash marketable value " of the property when the loss happened.

APPEAL from the Circuit Court for *Winnebago* County. Action upon a fire insurance policy, issued August 1, 1876, upon a three-fourths interest owned by the plaintiff *Thompson* in a certain hotel in the city of Oshkosh, in which the other plaintiffs were interested as mortgagees. The total insurance upon the property, in various companies, was $10,-000; the amount insured by the policy in suit was $1,000;

and, by the terms of the several policies, each company was to bear its proportion of any loss. The property was totally destroyed by fire, without fault of the plaintiffs. The complaint is in the usual form, with a copy of the policy annexed.

The answer alleges that it was provided by the policy that the loss or damage should be established "according to the true and actual marketable value" of the property at the time the loss should happen; that at the time of the fire the true and actual cash marketable value of the property insured, and the interest of *Thompson* therein, did not exceed $7,469.42, and plaintiffs did not suffer loss or damage exceeding that sum; and that defendant is therefore only liable to pay one-tenth part of that amount.

Plaintiffs demurred to the answer as not stating a defense; and defendant appealed from an order sustaining the demurrer.

For the appellant, a brief was filed by *Finch & Barber*, and the cause was argued orally by *Mr. Barber*. They contended, 1. That as the policy of the law is to do away with conclusive presumptions, and substitute those which are rebuttable; as many presumptions once deemed conclusive, "have by the opinions of later judges, acting upon more enlarged principles, become conclusive only in the absence of proofs to the contrary" (1 Phillipps on Ev., 5th ed., 522; Wharton on Ev., § 1236); as, in those statutes which have created conclusive presumptions, such as the statute of limitations and the statute of frauds, the nature of the presumption appears from the plain and explicit language of the statute itself, nothing being given by intendment or left to inference; as ch. 347 of 1874 does not expressly provide that the amount of insurance written in the policy shall be *conclusively* taken and deemed to be the true value of the property or measure of damages; as there is nothing else in the statute which shows such to have been the legislative intention; and as every just and reasonable purpose of the legislature will be secured without that construction — the

statute should be construed as meaning merely that the amount written in the policy shall be taken *prima facie* as the value of the property and the amount of the loss. 2. That if the statute be otherwise construed, still the parties to the contract may, by express stipulation therein, limit the liability of the company; though, in the absence of such a stipulation, the statute would fix the measure of damages; that the rate of insurance depends upon the existence or absence of such stipulations; that owners of property carrying heavy insurance prefer to accept policies with these special stipulations, thereby lessening the premiums to be paid; and that the court should enforce the contract as it is made. *Jennings v. Ins. Co.*, 2 Denio, 75: *Chase v. Ins. Co.*, 20 N. Y., 52; *Foote v. Ins. Co.*, 61 id., 576; *Rohrbach v. Ins. Co.*, 62 id., 62; May on Ins., 3. The contract is like those agreements between shippers and common carriers, by which the latter limit their common-law liability as insurers. *Dorr v. N. J. Steam Nav. Co.*, 11 N. Y., 492; *N. J. Steam Nav. Co. v. Merchants' B'k*, 6 How., (U. S.), 344; *Wells v. Railroad Co.*, 24 N. Y., 180; *Express Co. v. Caldwell*, 21 Wall., 266; *Bank of Kentucky v. Adams Ex. Co.*, 3 Otto, 176; *D. & M. Railroad Co. v. Bank*, 20 Wis., 123; *Boorman v. Express Co.*, 21 id., 152. The statute here does not prohibit insurance companies from thus restricting their liability, either by express terms or by necessary implication; it does not appear to be remedial in its nature, since it does not point out, nor does there otherwise appear to have been, any specific existing evil which it is designed to remedy; it is plainly and directly in derogation of the common and commercial law; and it must therefore be strictly construed, and not presumed to alter the common law further than it expressly declares. Sedgw. on Stat. & Con. Law, 2d ed., 267, and note; *Burnside v. Whitney*, 21 N. Y., 148; *Esterley's Appeal*, 54 Pa. St., 193: *Crowell v. Van Bibber*, 18 La. An., 637; *Bennett v. Holman*, 54 Miss., 323; *Blackman v. Wheaton*, 13 Minn., 326. The restriction of the company's liability

to the actual loss is just, reasonable, and in accordance with sound public policy. The fundamental principle of the contract of insurance is simple indemnity (May on Ins., § 2; *Wilson v. Hill*, 3 Met., 66; *Franklin Fire Ins. Co. v. Hamill*, 6 Gill, 87; *S. C.*, 2 Bennett's Ins. Cas., 567, Appleton's Am. Cyc., "Insurance;" 3 Kent's Com., 273; *Fuller v. Ins. Co.*, 36 Wis., 604); and stipulations in the contract limiting the liability of the insurer to the actual cash value of the property, or even to a less amount, are looked upon with favor by courts and legislatures. Laws of Mass. of 1873, ch. 331, prescribing form of policy; *Lee v. Ins. Co.*, 11 Cush., 324; *Stetson v. Ins. Co.*, 4 Mass., 331; *Freeman v. Ins. Co.*, 14 Abb. Pr., 398; *Ruse v. Ins. Co.*, 23 N. Y., 524; *Sawyer v. Ins. Co.*, 37 Wis., 546; *Columbian Ins. Co. v. Lawrence*, 2 Pet., 49: *Sadlers' Co. v. Badcock*, 2 Atk., 554; *Kulen Kemp v. Vigne*, 1 Durnf. & E., 304; *Lucina v. Crawford*, 2 Bos. & Pul. (2d ed.), 295; May on Ins., §§ 2, 7, 374, 376; Flanders on Ins., 2d ed., 376; R. S. of Wis., ch. 169, secs. 16–18. 3. That while the statute provides that the amount written in the policy "shall be taken as the true value of the property," the policy provides that the loss shall be established according to the "actual cash marketable value" at the time of the fire; that there is a wide distinction in insurance law between these two things, and the determination of the latter value, when applied to insured property, requires proofs of loss, estimates, etc., to be furnished by the insured; and that this stipulation in the policy makes it an *open* policy, and entitles the parties to show by evidence the market value of the property — the cost in cash to replace it. Flanders on Ins., 76, 608; *Brown v. Ins. Co.*, 105 Mass., 396; *S. C.*, 5 Bennett's Ins. Cas., 325; *Cox v. Ins. Co.*, 29 Ind., 586; *Huckins v. Ins. Co.*, 11 Foster, 238.

*H. B. Jackson*, for the respondents, contended that a statute capable of being so construed as to give it effect, will not be so construed as to render it a nullity (Smith's Com., §§ 486–7; Brown's Leg. Max., 664); that it is a fact within the gen-

eral knowledge of the court, and of which it will take judicial
notice (1 Greenl. Ev., § 6), that the general form of insurance
policies in use prior to the passage of ch. 347 of 1874, was the
same as that since used; that the construction of the statute
contended for by the defendant, allowing the company, in an
action upon such a policy, to set up the defense that the prop-
erty was not worth the amount of insurance written in the
policy, would render the statute a nullity; that the practice of
reckless companies in insuring property at an excessive valu-
ation, taking premiums based upon such valuation, and then,
in case of a loss, alleging that the property was overvalued,
was the evil which the statute was designed to remedy; and
that it ought to be so construed as to accomplish that intention.
Smith's Com., § 491.   2. That when the act declares that the
amount written in the policy shall be "*the* measure of dam-
ages," this is equivalent to saying that it shall be the *only*
measure of damages, since there cannot be two such measures
in one case.   3. That any intendment of the policy which would
provide a different measure of damages, would " stand against
the law," and should not be taken, if by any construction it
can be avoided.   Co. Litt., 42, 183; *Church Wardens of St.
Savior*, 10 Rep., 66; *Shore v. Wilson*, 9 Clark & F., 397;
*Att'y Gen. v. Clapham*, 4 De Gex, M. & G., 591; *Moss v.
Bainbridge*, 18 Beav., 478; 31 Eng. L. & E., 142, 565; *Archi-
bald v. Thomas*, 3 Cow., 284; *Riley v. Vanhouten*, 4 How.
(Miss.), 428.   4. That all contracts must be construed most
strongly *contra proferentem*.   Bacon's Max., Reg. 3; May on
Ins., § 175; *Ga. Home Ins. Co. v. Kinnier's Adm'x*, 5 Cent.
Law J., 127.   5. That, the statute being founded on considera-
tions of public policy, parties to private contracts cannot waive
the benefit of it even by express terms, much less by doubtful
implication.   *Melchoir v. McCarty*, 31 Wis., 254; Chitty on
Con., 598; *Staines v. Wainwright*, 6 Bing. (N. C.), 174; *White
v. Conn. Mut. L. Ins. Co.*, 5 Cent. Law J., 486; 55 N. H., 249,
264; 52 Me., 322.

COLE, J.   I.  The material part of the answer to be considered on the demurrer is, the allegation that the policy provided that in case of fire the loss or damage should be established according to the true and actual cash marketable value of the property when the loss happened; and that the true and actual cash marketable value of the property, at the time of the fire, was less than the amount of insurance on the property.   It is claimed that this shows a partial defense to the action.   The insured building was a brick hotel, which was wholly destroyed.   The policy was issued after ch. 347, Laws of 1874, took effect, and the case therefore necessarily involves a construction of that statute, and its application to the answer.   The act of 1874 is entitled " an act to regulate insurance companies," and provides that in all cases where an individual or company authorized by the laws of this state to take risks, issue policies and transact the business of insurance in this state, shall insure or issue a policy of insurance against loss by fire upon the real property of any individual or corporation in this state, and the property so insured shall be wholly destroyed without criminal fault on the part of the assured, the amount of insurance written in the policy " shall be taken and deemed the true value of the property at the time of such loss, and the amount of the loss sustained by the individual or corporation in whose favor the said policy was issued, and such amount shall be taken and deemed the measure of damages."   The words of this statute are neither obscure, doubtful nor ambiguous as to their meaning, and they therefore afford but little room for interpretation.   In clear and precise terms they make, in case of total loss of real property without criminal fault of the assured, the amount of insurance written in the policy, the value of the property at the time of loss; and that amount is fixed as the measure of damages.   It is analogous to a valued policy; only here the statute peremptorily declares what shall be deemed to be the real value of the property at the time of loss, and what sum

shall be paid as indemnity. And as the intention of the legislature is obvious, the statute clearly prescribing that the amount of insurance written in the policy shall be deemed the true value of the property at the time of loss, it results that the above allegation is bad and shows no defense. For if the statute is to have effect as enacted, nothing is left open in the case to proof; " the true and actual cash marketable value of the property " at the time it was destroyed, is not a matter to be inquired into, as the amount of insurance written in the policy determines the amount of loss and fixes the extent of the recovery. The ingenious counsel for the defendant insisted that the statute intends, and should be construed as only to mean, that the amount of insurance written in the policy shall be taken as *prima facie* the value of the property, so as, in case of total loss, to place the *onus* of proving the real value upon the insurer instead of the insured. But this construction seems quite inadmissible in view of the language, which expressly declares, not only that the amount of insurance written in the policy shall be taken and deemed as the true value of the property at the time of the loss, but that " such amount shall be taken and deemed the measure of damages." It will be seen that the statute adopts the amount of insurance written in the policy as the rule of damages, or amount of compensation, leaving no question open as to what in fact was the real value of the property destroyed. The manifest policy of the statute is to prevent over insurance, and to guard, as far as possible, against carelessness and every inducement to destroy property in order to procure the insurance upon it. Where property is insured above its value, a strong temptation is presented to an unscrupulous and dishonest owner, either to intentionally burn it, or not to guard and protect it as he ought. Not sharing in the risk, with the insurer, it is for his advantage that it be destroyed; and it often is destroyed with other property, when it would not have been but for the fact of such excessive insurance. And

insurance companies, too, actuated by motives of gain, or incited by sharp competition in business, take risks, frequently, recklessly and for amounts in excess of the real value of the property insured; which they would be less likely to do if compelled to pay the amount of insurance written in their policies. It is evident that it was to prevent these evils and guard against these mischiefs, that the statute was enacted. Its policy seems to be wise and wholesome; but if it were not so, it is not the province of the court to emasculate the law by any nice or forced construction of its language. As it stands, it clearly makes the amount of insurance written in the policy the measure of the value of the property and the rule of damages. And, as the meaning and intent of the statute are clear, effect must be given to it, certainly as regards this class of property. The measure of damages, therefore, being fixed by the statute, the company had no right to show that the assured sustained a loss less than the amount written in the policy.

II. But the counsel further contends that, by reason of the stipulation in the policy, the statute does not apply and cannot govern as to the extent of the defendant's liability. It is said the parties were abundantly able to contract for themselves; that they could restrict or change the rule provided by the statute; and that the assured did expressly waive that rule, by agreeing that the loss should be established according to the true and actual cash marketable value of the property when destroyed. We have no doubt that the statute applies to the policy; and, so far as there is any conflict or inconsistency between it and the provisions of the policy, the statute must control. A strictly analogous question was presented to the U. S. circuit court for the western district of Missouri, in *White v. Conn. Mut. Life Ins. Co.* (Central Law Journal, Dec. 7, 1877); and it was so ruled. In that case, it was held that an act of the legislature of Missouri, in respect to policies of life insurance, extended to all policies delivered after the act

took effect; and that, where the provisions of the act were in conflict with the stipulations of the policy, the act controlled. The opinion is by DILLON, C. J., who, among other things, says: "We are of the opinion that policies issued and delivered in Missouri after that act took effect, fall within its protective operation; and as to such policies the act is to be treated as if incorporated therein; certainly, unless there is an express provision in the policy to the contrary, if it be competent, indeed, to insert such a provision. Our attention has been called to a late decision of the court of appeals of Kentucky, in which a conclusion is reached that seems to be in conflict with the view above expressed. *Farmers', etc., Ins. Co. v. Curry*, 10 Ch. L. N., 43." We have carefully examined the decision of the court of Kentucky to which Judge DILLON refers, and like him fail to be convinced by its reasoning, and cannot adopt the doctrine there laid down. For it seems to us that the decision defeats the very policy and purpose of the statute; and we are therefore unwilling to follow it. See *Emery v. Piscataqua F. & M. Ins. Co.*, 52 Me., 322, and *Chamberlain v. Ins. Co.*, 55 N. H., 249. We have already said that the legislature seems to have enacted the law of 1874 to prevent or do away with, as far as possible, the great evils and mischiefs arising from over insurance. Consequently, on grounds of public policy and in order to accomplish that end, it was provided that the amount of insurance written in the policy should be conclusive as to the value of the real property destroyed. Now the law is well settled, that where a statute is founded upon public policy, a party cannot waive its provisions even by express contract. "The contracts of private persons cannot alter a rule established on grounds of public policy." *Emery v. Piscataqua F. & M. Ins. Co., supra*; Sedgw. Stat. & Con. Law, p. 70. The law of 1874 must be regarded as though written in the policy itself; and the stipulation that the loss shall be established according to the actual cash marketable value of the property when destroyed, being

in conflict with the rule of damages prescribed by the statute, must fall. The counsel argued that the same rule obtains here as in cases where common carriers have restricted their common-law liability by special agreement. But the cases are not analogous, for very obvious reasons. Where the owner, in consideration of paying a less rate, agrees to relieve the carrier from his liability as insurer of the property, no principle of public policy may be violated. But suppose he should contract to exempt the carrier from liability for gross negligence? It would not be difficult to find respectable decisions which would condemn such a contract as unreasonable and contrary to public policy.

It will be noticed that the statute relates solely to insurance upon real property, which the parties can see and fix a value upon when the insurance is effected. If companies exercise the care which it is for the public interest they should use in making the valuation, there will be no danger of excessive insurance.

We were referred to some cases in Massachusetts bearing upon the question under consideration; but as we do not rest our decision upon them, we will only remark that they hold, for example, that where the policy states that the amount insured is three-fourths of the value of the property as stated by the applicant, the valuation thus agreed upon by the parties is conclusive, in the absence of fraud. See *Luce v. Dorchester Ins. Co.*, 105 Mass., 297; *Brown v. Quincy Ins. Co.*, id., 396.

*By the Court.*—The order sustaining the demurrer to the answer is affirmed, and the cause remanded for further proceedings.