## MINNIE HEIM v. AMERICAN ALLIANCE INSURANCE COMPANY OF NEW YORK.[1]

### December 10, 1920.

### No. 21,875.

**Insurance against loss of rents—use of rider unlawful.**

    In insuring the owner of a building against loss of rents in consequence of fire, a fire insurance company may not lawfully use a rider upon the standard policy prescribed by statute which provides for any method of determining liability that results in limiting the recovery to less than the actual loss and less than the amount of insurance.

Action in the district court for Ramsey county to recover $1,600 for loss of rents. The answer set out the rider to the policy quoted in the first paragraph of the opinion and alleged that the portion of the policy

[1]Reported in 180 N. W. 225.

quoted was the only part thereof which pertained to the subject matter of the policy or whereby plaintiff was insured against loss of rents. The case was tried on stipulated facts before Haupt, J., who made findings and ordered judgment in favor of plaintiff for $187.46 being $14.42 per week for 13 weeks. From an order denying her motion for a new trial, plaintiff appealed. Reversed.

*Ira C. Oehler,* and *O'Brien, Young, Stone & Horn,* for appellant.

*Moore, Oppenheimer & Peterson,* for respondent.

This rider defines the subject matter of the insurance, which was not physical property subject to either a total or partial destruction, but the disuse of certain property, either in whole or in part, because of the fact that it was rendered temporarily untenantable. Such a loss of rents could only be ascertained by the consideration of certain elements, namely: (1) The amount of the rent at the time of the fire; (2) the amount of rent received during the period of untenantability, and (3) the extent or duration of the period of loss or untenantability. If any of these elements are lacking, the loss cannot be ascertained. The plaintiff recognizes the necessity of specifying two of the elements constituting the coverage, namely: (1) The amount of the rent per month at the time of the fire, and (2) the fact that a 25 per cent reduction was made necessary for a time by the fire, but the appellant insists on ignoring the third expressly specified element, to wit: The period required to put the premises in a tenantable condition.

To permit any portion of the words of the rider to be stricken out is to change the contract of the parties and to substitute a different contract therefor, and this notwithstanding the fact that the parties by the very language of the statute were authorized to contract at will with reference to the subject matter of rent insurance.

Further, the period of untenantability, throughout the clause above quoted, was the condition against which the assured sought and was granted protection. By the terms of another statute, a tenant need not pay rent, and was authorized to vacate the leased premises, if they became untenantable, and it was therefore important that the landlord should have indemnity during such period and against an election on the part of the tenant to quit the leased premises. Such being the possible loss to be guarded against the parties undertook to define the man-

ner of computing the loss during the period of untenantability, and agreed upon the natural and universal custom of considering such period of untenantability to be the period which would be required "to put the premises in a tenantable condition." It is needless to point out that the premium always is proportioned to the risk, and that if a property owner is to be under no duty to restore damaged premises to a tenantable condition, he cannot hope to obtain insurance against a loss of rents running over an indefinite period in the future.

LEES, C.

Action to recover upon a policy insuring plaintiff against loss of rents caused by fire. The insurance was effected by a rider attached to the policy, reading as follows:

"$1600 on the rents of 1 & 2 story building, with roof, situate 144-146-148 E. 6th St., St. Paul, Minn.

"In case the above named building, or any part thereof, shall be rendered untenantable by fire, this company shall be liable to the assured for the actual loss of rents ensuing therefrom, not exceeding the sum insured, to be computed from the date of the occurrence of said fire, and to be determined by the time it would require to put the premises in tenantable condition.

"Attached to and forming a part of policy 6208 of the German Alliance Ins. Co. of New York."

There was a stipulation of facts from which the trial court found that the fire occurred while the insurance was in force and injured the building covered by the policy. Plaintiff was prevented from repairing the building by reason of certain provisions of the charter and ordinances of the city of St. Paul and the orders of the lawful authorities of the city. If she had been permitted to repair, it could have been put in tenantable condition in six weeks. The building could have been torn down and entirely rebuilt and put in tenantable condition in 90 days. Plaintiff neither repaired nor rebuilt it, but permitted it to remain in the condition in which it was left by the fire. Her consequent loss of rent during the period of 13 weeks (the time required to rebuild) was $187.46. Judgment was ordered in her favor for that amount.

It was stipulated as a fact that $1,245.37 represented her total loss of rentals from the date of the fire to the date of expiration of the term of the lease under which the building was occupied by her tenant. The lease expired before the policy. ·Plaintiff appealed from an order denying her motion for a new trial. The brief filed in her behalf prefaces the argument with this statement:

"This appeal presents a single question which can be stated thus: May a fire insurance company insert in a standard policy a clause not specifically authorized by statute, providing for a method of determining liability which results in limiting the recovery to less than the actual loss, and less, also, than the insurance purchased?"

No other question was discussed in the briefs originally filed, but after the case had been argued orally the court requested additional briefs addressed to the question of the proper construction of the rider and plaintiff's rights thereunder, in view of the finding that she was prevented from repairing the building because of the city ordinances. Such briefs were filed. At the outset of the brief filed for defendant it is suggested that the questions submitted by the court are not open to consideration upon the record presented on the appeal. In plaintiff's brief, her counsel, with characteristic candor, state that the point of the court's inquiry had not occurred to them until the request for additional briefs was made. Upon further consideration of the record and in view of the evident intention of the parties to litigate only the one question stated in plaintiff's original brief, we have concluded that our decision should be confined solely to that question.

1. Section 3318, G. S. 1913, declares:

"No fire company shall issue on property in this state any policy other than the standard form herein set forth  * * *  and no condition, stipulation or term other than those therein provided for whether as to  * * *  limitation  * * *" or otherwise shall·be valid if inserted in any such policy, except as follows:  * * *  It may print or use in its policy printed forms for insurance against loss of rents and rental values, leaseholds of buildings, use and occupancy.  * * *"

Plaintiff's counsel contend that this statute forbids the use of a rider having the conditions and stipulations found in the one now before us.

They do not deny that the limitation upon the amount of defendant's liability would be good in the absence of the statute.

Preceding the standard form, as set forth in section 3318, there is a lengthy enumeration of what may be printed or used in the policy in addition to its provisions. The form itself contains nothing relating to rent insurance. It was evidently designed to cover only the loss of physical property. Necessarily there must be some addition to its terms if the owner of a building is to be insured against the loss of rents as well as against the loss of the building. The standard form was prescribed by section 53, c. 175, p. 417, Laws 1895. The first and only provision for rent insurance was made in chapter 331, p. 376, Laws 1909. Both are now part of section 3318. The act of 1909 permitted an insurance company "to print or use in its policy" forms for rent insurance, but did not prescribe the form of contract for such insurance. The rider now under consideration appears to be in the form in general use in writing rent insurance. 7 Cooley, Briefs on Ins. Supp. p. 1196-1198. That is a fact entitled to some consideration, but of course it is not decisive of the controversy over defendant's right to use it.

We have been cited to and have found no case in which the question now presented has been squarely decided. The indefiniteness of the statute gives rise to uncertainty. A consideration of the general purpose, scope and effect of legislation of a similar nature may help to solve the doubts.

The statute is founded on public policy. It was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection that he might naturally suppose he was getting under his contract. The declaration of the legislature on the subject of forms of contracts of insurance, being within its constitutional powers, is the public policy of the state. Midway Realty Co. v. City of St. Paul, 124 Minn. 300, 145 N. W. 21. It is a salutary rule of law that, when a statute is founded upon public policy, those to whom it applies should not be permitted to waive its provisions. Fidelity & Casualty Co. v. Eickhoff, 63 Minn. 170, 178, 65 N. W. 351, 30 L.R.A. 586, 56 Am. St. 464; Reilly v. Franklin Ins. Co. 43 Wis. 449,

28 Am. Rep. 552; Emery v. Piscatauqua Ins. Co. 52 Me. 322. The statute is a remedial one, and, therefore, it is to be construed liberally for the suppression of the mischief it was designed to do away with; it was enacted to promote beneficial public objects and, therefore, a broad construction is to be given to it. Doten v. Aetna Ins. Co. 77 Minn. 474, 479, 80 N. W. 630; State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 397, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047. Regard should be had for its object and purpose because of the light they cast upon the meaning of the language employed. Washed Sand & G. Co. v. Great Northern Ry. Co. 130 Minn. 272, 153 N. W. 610.

In prescribing the form of standard policy, the legislature sought to secure uniformity in all contracts of fire insurance by requiring all companies to use the same form of policy instead of as many different forms as there were companies writing insurance. Its use is compulsory. With such changes as are authorized by statute, it is the only form of fire insurance contract which may lawfully be used in this state. Wild Rice Lumber Co. v. Royal Ins. Co. 99 Minn. 190, 108 N. W. 871. Its provisions not only constitute the contract between the insurer and the insured, but the law governing the rights of the parties as well. Straker v. Phenix Ins. Co. 101 Wis. 413, 77 N. W. 752; Hronish v. Home Ins. Co. 33 S. D. 428, 146 N. W. 588. The statute does not prohibit a company from printing in or attaching to the policy terms or conditions not found in the standard form, provided they are not inconsistent with or a waiver of any of the provisions of such form. So far as the conditions and provisions of the form go, they are controlling, and may not be omitted, changed or waived, though provisions not conflicting with them may be added when necessary to express the terms of a contract of insurance which is authorized by the statute. Bourgeois v. N. W. Nat. Ins. Co. 86 Wis. 606, 57 N. W. 347.

Tested by these principles, we conclude that such a rider as we now have before us is not authorized by the statute. Plaintiff bought and paid for insurance to the amount of $1,600, sustained an actual loss of rents amounting to $1,245.31, and, if the rider is given effect, is permitted to recover only $187.46. We think defendant was not author-

ized to make a contract with her which would thus reduce her right of recovery. The rider purports to insure her to the extent of her actual loss of rent not exceeding $1,600, but contains a limitation which virtually nullifies the provision for such insurance. It was said of old-time policies of insurance that they contained a promise to pay in large type which was taken back in small type. So of this rider it may be said that it first contains a promise to pay the actual loss of rents, which is later modified materially by the provision for computing the loss. It is quite true that the legislature has left it to the parties to frame their contract when rent insurance has been agreed upon and has not attempted to provide a form for their use, but we think it may justly be inferred that the contract must conform to the policy of the legislature respecting contracts of fire insurance in general. It was the purpose of the legislature to secure to the insured payment in full of the loss up to the amount written in the policy. Sections 3318, 3322, G. S. 1913. Ohage v. Union Ins. Co. 82 Minn. 426, 85 N. W. 212; Moore v. Sun Ins. Office, 100 Minn. 374, 111 N. W. 260; Oppenheim v. Fireman's Fund Ins. Co. 119 Minn. 417, 138 N. W. 777.

This purpose can be thwarted if an insurance company may lawfully use a rider like the one now under consideration, which cuts down the right to recover the amount of the loss to a sum representing only a fraction thereof. If defendant had written a $1,600 policy of straight fire insurance covering plaintiff's building, could it have lawfully inserted a clause in the standard form providing for a method of computing the loss whereby its liability, in case of a partial loss amounting to $1,245.31, would be limited to less than one-sixth of that amount? We think it is clear it could not have done so. It ought not to be permitted to do so where the insurance is against loss of rents. The use of such a rider is not specifically authorized by the statute; the limitation upon the liability of the insurer which it contains is not in harmony with the policy of the legislature respecting fire insurance, and the conclusion follows that such limitation cannot be given effect.

The order appealed from is, therefore, reversed and a new trial granted.

On February 4, 1921, the following opinion was filed:

PER CURIAM.

Some expressions in the opinion have given rise to uncertainty as to the exact scope of the decision. To clear up the doubts indicated in the petition for a rehearing, it is proper to say that the decision was limited strictly to the stipulated facts of the case as incorporated in the findings. It was held that the rider provided for a method of determining the liability of the insurer for loss of rents caused by fire, which, if followed in the case at bar, would result in reducing the recovery to less than the actual loss and less than the amount of the insurance. It was considered that the loss of rents was a direct consequence of the fire, for the reason that the insured was prevented from repairing the part of the building damaged by the fire on account of the prohibitions of the charter and ordinances of the city of St. Paul. It was not held that the use of the rider was prohibited and its terms unenforceable under any and all circumstances. The rider was condemned because it was contrary to public policy to give effect to its terms under the facts in this case, and not because its terms would be contrary to public policy in every case.

The petition for a rehearing is denied.