## ANNA S. CLARK v. ROCHESTER FARMERS MUTUAL FIRE INSURANCE COMPANY.[1]

January 23, 1925.

No. 24,328.

**Cancelation of insurance policy not proven.**

1. The evidence failed to show a cancelation of plaintiff's policy of insurance in the manner prescribed by section 3396, G. S. 1913.

**Statute governs method of canceling policy.**

2. Plaintiff was in default in the payment of an assessment, had been notified of her delinquency, and payment had been demanded. There was an issue of fact as to whether she had also been notified that the policy had been canceled, but would be reinstated if the assessment was paid within ten days. The trial court declined to make a finding covering this issue. The application of the principle of the law of contracts, which permits one of the parties to treat the contract as at an end for the failure of the other party to perform, does not extend to the policy in question. The business of insurance is quasi public in character and the state, in the exercise of the police power, has prescribed the manner in which the contract evidenced by the policy may be terminated. The alleged notice was not given pursuant to a majority vote of the board of directors annulling the policy in accordance with the provisions of section 3396, G. S. 1913.

Action in the district court for Olmsted county to recover $1,800 upon a fire insurance policy. The case was tried before Callaghan, J., who ordered judgment in favor of plaintiff for $1,477.07. From the judgment, defendant appealed. Affirmed.

*Oscar C. Ronken,* for appellant.

*Granger & Clemens,* for respondent.

LEES, C.

This action was brought on a policy of insurance covering plaintiff's dwelling house, which was destroyed by fire on May 1, 1923. The answer alleged that prior to the fire the policy had been can-

[1]Reported in 201 N. W. 930.

celed and terminated for plaintiff's failure to pay an assessment. There was a trial by the court without a jury. In substance these were the findings: Defendant was organized in 1882, under the act of 1875 authorizing the formation of town insurance companies. In 1911 its corporate franchise was renewed for 30 years. It was engaged in the business of insuring the property of its members on a mutual assessment plan. When the policy was issued plaintiff paid the required premium or membership fee. After the fire she gave due notice of the loss, but defendant refused to pay it, basing its refusal solely on the ground that the policy had been canceled. On October 1, 1922, defendant levied an assessment on all its members and gave them notice thereof. Plaintiff's assessment was $4.80, but she failed to pay it and became subject to a penalty of 10 per cent and so owed the defendant $5.28 at the time of the fire. The policy was never canceled and was in force when the loss occurred. Judgment in plaintiff's favor for the amount admittedly due if the policy was in force was ordered, after deducting the amount of the assessment. Defendant asked the court to make an additional finding, determining whether on or about April 18, 1923, plaintiff had been notified that the policy had terminated because of her failure to pay the assessment. The motion was denied on the ground that it related to an immaterial matter, and on the further ground that the evidence would not justify a finding that the alleged notice had been served. Judgment was then entered on the findings and defendant appealed.

The term of the insurance was 5 years from January 13, 1922. The articles of association and by-laws are made part of the policy. They provide that all persons insured are members of the company as long as their insurance continues in force. Each member is liable for assessments as long as he remains a member. To obtain a policy an applicant for insurance must pay a fee of 30 cents on each $100 of insurance. The fund thus accumulated is used to pay the expenses of conducting the business. If the insured fails to pay his assessments within the prescribed time, ten per cent is added thereto. Liability to assessment continues until the policy is canceled and the membership terminated. In addition to these pro-

visions of the policy, reference must be had to the statutes applicable to insurance companies of the class to which defendant belongs. They provide that membership may be terminated by giving notice to the secretary and paying the withdrawing member's share of existing claims, or by the annulment and cancelation of the policy by the board of directors and written notice thereof to the policyholder. G. S. 1913, §§ 3381, 3396. It is the duty of the secretary to notify each member of an assessment. The notice is to be given by mail. It must specify when and to whom the assessment is to be paid. The time allowed for payment shall not be less than 60 days nor more than 90 days from the date of the notice. Payment may be enforced by suit at law against the delinquent member. G. S. 1913, § 3401.

Defendant failed to show that plaintiff's policy was canceled by a majority vote of the board of directors in the manner prescribed by section 3396, G. S. 1913, hence the defense of cancelation was not established.

The only other defense was that the contract of insurance had been terminated for plaintiff's failure to pay her assessment. Mr. Hammer, an attorney whom defendant employed to collect delinquent assessments, testified that on February 26, 1923, he wrote to plaintiff demanding payment of her assessment, and produced a carbon copy of his letter, which was received in evidence; that on April 18, 1923, he sent plaintiff a second notice, informing her that her policy had been canceled for the nonpayment of a premium, but that she would be reinstated if she made prompt remittance, and that if she failed to pay within ten days from the date of the notice, the company would understand that she no longer wished protection. He produced a form of notice containing the foregoing statements and testified that he copied the form and mailed the copies to 12 or 13 persons, including plaintiff. The paper produced was not a carbon copy of a notice or letter addressed to plaintiff, as was the first letter produced, but the court received it in evidence. Plaintiff testified that she received two notices from Mr. Hammer, the last one two or three weeks before the fire; that in both she was requested to pay her assessment to him, nothing be-

ing said about the cancelation of the policy; that in response to the notices she went to his office several times to pay the assessment, but found no one there; she offered to pay it after the fire, but defendant would not accept payment. This evidence is the basis for the contention that, before the fire occurred, defendant had elected to terminate the contract of insurance for plaintiff's failure to pay the assessment. The contention is founded on the familiar principle of the law of contracts that, if one of the parties refuses to perform, the other may treat the contract as at an end, its breach excusing performance. Wasser v. Western Land Securities Co. 97 Minn. 460, 107 N. W. 160; Rea v. Algren, 104 Minn. 316, 116 N. W. 580, 124 Am. St. 627; Hjorth v. Albert Lea Mach. Co. 142 Minn. 387, 172 N. W. 488; 3 Williston, Cont. §§ 1302, 1303; 9 Minn. Law Rev. p. 146.

Although a policy of insurance is a contract, it does not stand on the same footing as ordinary contracts. The business of insurance is quasi public in character; hence it is competent for the state, in the exercise of the police power, to regulate it for the protection of the public. State v. Beardsley, 88 Minn. 20, 25, 92 N. W. 472; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. 612, 59 L. ed. 1011, L. R. A. 1915C, 1189.

The subject of insurance has received much attention at the hands of the legislature. Although the business of township mutual fire insurance companies has not been regulated to the same extent as that of stock companies, the manner in which membership in township companies may be terminated and policies canceled is prescribed by the statutes heretofore cited. A similar statute was considered in Illett v. North Star F. M. Ins. Co. 156 Minn. 128, 194 N. W. 1, and the principles there stated are applicable here.

It seems to us that the Illett case is decisive of the case at bar. Not only is it conclusive upon the merits, but it leads to the conclusion that, if the court had found in response to defendant's request that plaintiff received the second notice referred to in Mr. Hammer's testimony, it could not effect the result.

We are of the opinion that the trial court correctly disposed of the case and the judgment is accordingly affirmed.