MARYLAND CASUALTY COMPANY v. AMERICAN LUMBER
& WRECKING COMPANY, INC.[1]

December 2, 1938.

No. 31,747.

[1]Reported in 282 N. W. 806.

*Leonard, Street & Deinard* and *Hyman Edelman,* for appellant.
*J. Frank Boyles* and *Lewis M. Himmelman,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order denying its alternative motion for amended findings or new trial.

Plaintiff is engaged in the business of writing insurance under the workmen's compensation act and is a member of the Minnesota compensation rating bureau, which was organized pursuant to L. 1921, c. 85, 1 Mason Minn. St. 1927, §§ 3622 and 3634. Defendant is engaged in the business of wrecking buildings and other structures and as such is subject to the provisions of our compensation

act. This includes the duty of carrying workmen's compensation insurance. Prior to October 21, 1933, it had applied to three different members of the rating bureau for compensation insurance coverage. All were rejected. Pursuant to the provisions of L. 1929, c. 237, 3 Mason Minn. St. 1938 Supp. §§ 3634-1 and 3634-2, it thereupon made application to the bureau and the rating committee thereof for an assignment of the risk sought to be covered. The bureau, having examined defendant's application for coverage, determined that it was a good faith risk and as such entitled to coverage. It fixed the initial premium for a policy under the act. Defendant paid the initial premium to the bureau, which thereupon designated plaintiff as a member thereof to issue a policy to defendant. Pursuant to the requirement so made the policy here involved was issued. It is labeled "Standard Workmen's Compensation and Employers' Liability Policy." There was attached to the policy an endorsement or rider which provided as follows:

"In consideration of the issuance of the policy to which this endorsement is attached and any provisions or conditions of the policy to the contrary notwithstanding, it is hereby agreed that this policy does not and shall not cover wrecking or demolition of any building or structure or part thereof or any operation incidental thereto or connected therewith at the location of such work unless the policy is extended, at the request of the Assured, by endorsement stating the acceptance of liability thereon, together with estimated pay roll for such specific work; and the policy shall cover only such operations at such specific location and from the date of such endorsement.

"It is also agreed that the Company shall at all times be permitted to make inspections of any location submitted for coverage under the policy.

"Should the Company be required by law to make any payment or payments under the terms of this policy as a result of injuries and/or death of any employee engaged in such operations at locations not specifically stated in the policy contract or endorsements attached thereto, it is agreed that this endorsement shall constitute

a specific and separate agreement between the Company and the Assured, under which the Assured will immediately reimburse the Company in full for any such expenditure. * * *"

The policy with the mentioned rider was duly filed by plaintiff with the bureau and by it approved. Similar riders or endorsements had been used by other companies. As a matter of fact plaintiff had over a period of some two years next prior thereto issued compensation policies to defendant containing the same type of endorsement. The liabilities created by virtue of this policy were not pooled with the associated companies, nor was the premium prorated amongst them. It was issued under the voluntary plan after plaintiff had been designated as the company required to issue it.

On August 5, 1934, while the policy and the rider mentioned were in full force and effect, defendant undertook the wrecking of a structure at Island Station in St. Paul. On August 9 and during the progress of this work two of its employes suffered accidental injuries which under the compensation act gave them the right to receive hospitalization, medical services, and compensation. Plaintiff duly paid these items, in all amounting to $873.62. It demanded reimbursement from defendant because defendant had failed and neglected to comply with the provisions of the rider, which provided for giving plaintiff notice of the location of the work, its size, extent, and its estimated pay roll. Plaintiff was not informed of this job until August 13. As such, plaintiff collected no premium on the pay roll involved in this particular work between August 5 and August 14.

As will be seen, the question hinges upon the validity of the rider. The court was of opinion that the rider was a valid engagement voluntarily and knowingly entered into by the parties thereto, and directed entry of judgment for the mentioned amount with interest from the time the final payment had been made by it to the injured workmen.

■ Defendant's principal contention is that the reimbursement rider violated L. 1929, c. 237, § 2 (3 Mason Minn. St. 1938 Supp. § 3634-2), which provides that the designated insurer shall "issue a

policy containing the usual and customary provisions found in such policies." It is argued that the terms of the rider are neither usual nor customary in workmen's compensation policies and therefore are not binding upon it. This argument has merit only if the statute imposes a limit upon the agreement the insurer and the insured may make governing the relations between themselves. It is well settled that where the legislature has prescribed a statutory form of policy any provision to the contrary in the policy contract is ineffective. Heim v. American Alliance Ins. Co. 147 Minn. 283, 180 N. W. 225, 1022. If there is no statute governing the form and content of the policy, the parties are free to incorporate such provisions and conditions as they desire, Juster v. John Hancock Mut. L. Ins. Co. 194 Minn. 382, 260 N. W. 493, subject only to such restrictions of law as are other parties to a voluntary contract. While insurance contracts ordinarily have some features different from other contracts, yet fundamentally they are like any other contract and governed by the same underlying principles. Shake v. Westchester F. Ins. Co. 158 Minn. 40, 196 N. W. 804. Since there is no statutory form of workmen's compensation policy in this state, the employer and insurer may insert unusual provisions in the contract insofar as their own relations are concerned unless this statute operates as a barrier. We do not think it does. This becomes more apparent when the nature of compensation insurance is considered.

■ Since its origin, the object of this form of insurance has been to protect the employe from the hazards incident to his occupation. After the constitutionality of the various laws was established (in Minnesota, Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412) and experience had proved their value, employers generally began to accept them more willingly than when first enacted. But still, from time to time, the legislature has had to enact laws to prevent the employer and the insurer from making an agreement which would in any way tend to prejudice the statutory rights given to the employe. We think the statute under discussion is of this character. Its obvious purpose is to place a definite limit on the agreement these two parties may make insofar as the employe might be affected thereby. Plainly, under this

statute, it is not within the power of the employer and insurer to enter into a policy contract which prevents the employe from enjoying the full protection of a policy containing the "usual and customary provisions found in such policies." But it does not follow that the statute prevents the employer and insurer from governing their respective rights and duties by agreement. It does not prohibit them, as between themselves, from determining on whom ultimate financial responsibility will rest in certain situations as long as that stipulation does not abridge or impair the protection thrown around the employe by the statute. The reimbursement rider here involved does not encounter that objection. The employe must be, and in this case was, accorded the full benefit bestowed by law regardless of the terms of the rider governing ultimate liability as between the employer and his insurer in certain situations. Consequently, we think, the reimbursement rider is a valid and effective agreement between the parties thereto.

The conclusion reached is entirely consistent with Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358, which involved a suit by an *employe* and the insurance carrier sought to avoid liability on the ground the occupation in which the injury occurred was not covered by the policy which limited coverage. There the court held that under G. S. 1923, § 4288, the coverage could not be limited to certain occupations solely by agreement between the insurance carrier and the employer. It must be noted that the agreement between the insurer and insured, if there given effect, would have resulted in an impairment of the protection given the employe by the statute.

■ Defendant urges that a compensation insurer cannot require an employer to reimburse it for payments made to injured employes covered by the policy. Absent legal prohibitions or limitations, the extent of liability assumed by the insurer is essentially a matter of contract. Whether he shall be solely liable for the payments or obligations thereby created for the benefit of a third party, or is to have a right of reimbursement from the other party to the contract, would seem to be properly within the scope of contractual engagement. For what losses, from what specific causes, and under

what specific circumstances the insurance company shall be responsible without right of reimbursement is for the insurer and insured to decide unless there is some provision of law otherwise determinative.

1 Mason Minn. St. 1927, § 3314, defines insurance as follows:

"Insurance is any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage."

This definition does not prohibit the parties hereto from determining as between themselves the extent of absolute liability. Substantially that is all the rider accomplished. It did not provide that there should be reimbursement in every case but only in situations where the injury occurred in locations not specifically stated in the policy contract or endorsements attached thereto. Also to be remembered is the fact that the contract evidenced by this rider was knowingly and deliberately made. Fraud, coercion, mutual mistake, and overreaching are not in the case in any manner or form. Nor are we required upon the present record to determine whether plaintiff could as a matter of law have refused to issue the policy without such rider. That question, too, is out of the case.

There are substantial reasons why plaintiff should be permitted, absent as we have repeatedly said statutory prohibition, to enter into such arrangement as was here made. Clearly, as the insurer, it had a right to know the extent of defendant's insurance coverage so that an actuarial basis might be found and applied to the risks going therewith. The very nature of defendant's engagements were such as to shift its operations from place to place. Additional men might well be employed from time to time with constantly changing and perhaps increasing pay rolls. Obviously these were items of vital concern to plaintiff and to defendant as well, for upon the size of the pay roll, as to this type of insurance, depends the amount of premiums to be met. Nor can we perceive anything inherently wrong or oppressive about the requirements to be performed by defendant under the terms stated in this rider. All of them may

well have for their bases the experience gained by this kind of insurance, covering, as it necessarily must, a special type of risk. That defendant's business is fraught with great hazards to its employes is apparent. Perhaps that was the very reason it was refused coverage by other underwriters. In this field, as in all insurance fields, there is keen competition amongst insurance underwriters for desirable business. If defendant had the financial means and the will to be its own insurer, it might well be that this result could have been obtained by it by appropriate application to the industrial commission. (The applicable statutory provision at the time here involved is 1 Mason Minn. St. 1927, § 4288. That has later been amended and is now found in 3 Mason Minn. St. 1938 Supp. § 4272-2.) In that event there would be no question of who was to bear the full and ultimate liability.

While there are other points made by defendant, we think what has been said adequately covers the case for decision on the merits, and we refrain from further discussion thereof.

The order is affirmed.

