HELEN L. SHANK v. FIDELITY MUTUAL LIFE INSURANCE COMPANY.[1]

December 28, 1945.

No. 34,068.

*Geoffrey P. Mahoney* and *Bergmann Richards*, for appellant.

*Faegre & Benson, Raymond Scallen,* and *Rex H. Kitts,* for respondent.

[1] Reported in 21 N. W. (2d) 235.

MAGNEY, JUSTICE.

On August 21, 1940, defendant issued a 20-year endowment policy to Eugene S. Shank insuring his life for $5,000. He was then an airline pilot. On May 12, 1942, his aircraft crashed, causing injuries from which he died. Plaintiff as beneficiary brought action to recover the face amount of the policy. She was allowed $391.19, which represented the full policy reserve and certain added dividends. Her motion for an order amending the conclusions of law or new trial was denied, and she appeals.

The policy itself is in the standard form. A mimeographed endorsement or rider in the following language was attached to the policy:

"This policy is issued and accepted upon the express agreement that in the event of the death of the insured directly or indirectly as the result of *service, travel,* or *flight* in any species of air-craft, except while riding as a fare-paying passenger in a licensed commercial air-craft provided by an incorporated common carrier for passenger service and while such air-craft is operated by a licensed transport pilot and is flying in a regular civil airway between definitely established air ports, the liability of the Company to the beneficiary shall be limited to an amount equal to the reserve on this policy less any indebtedness hereon.

"The provision of this policy regarding incontestability is hereby amended by adding thereto a provision that, 'The defense, by the Company, of any claim hereunder on the ground that the death of the insured was the result of *service, travel* or *flight* in any species of air-craft, except while riding as a fare-paying passenger in a licensed commercial air-craft provided by an incorporated common carrier for passenger service and while such was operated by a licensed transport pilot and flying in a regular civil airway between definitely established air ports, shall not be construed to be a contest of this policy.'" (Italics supplied.)

This rider or endorsement is referred to as a "special aviation clause." It purports to reduce the company's liability under the

policy to an amount equal to the policy reserve in the event of death of the insured directly or indirectly as the result of *service, travel,* or *flight* in any species of aircraft, except under certain circumstances specified in the endorsement. Plaintiff contends that the restrictive "special aviation clause" is in contravention of the statutes of the state of Minnesota and therefore void and unenforceable.

Minn. St. 1941, § 61.30 (Mason St. 1927, § 3402), which sets out provisions which must be included in every policy of insurance, reads in part as follows:

"No policy of life insurance in form other than as provided in section 61.27 shall be issued in this state, or be issued by a life insurance company organized under the laws of this state, unless the same shall contain the following provisions:

\* \* \* \* \*

"(3) A provision that the policy shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date, except for non-payment of premiums and except for violations of the conditions of the policy relating to naval and military services in time of war, and, at the option of the company, provisions relative to benefits in the event of total and permanent disability, and provisions which grant additional insurance specifically against death by accident, may also be excepted; *a special form of policy may be issued on the life of a person employed in an occupation classed by the company as extra hazardous or as leading to hazardous employment, which shall provide that service in certain designated occupations may reduce the company's liability under the policy to a certain designated amount not less than the full policy reserve;*" (Italics supplied.)

Defendant insists that the policy which it issued in the instant case complied with the above exception and was a permissible special form of policy under its very terms. Plaintiff concedes that had defendant followed the provisions of the statute and limited

its exception to death from service in a hazardous occupation, in this case service as an aircraft pilot, the extra-hazardous clause would be valid. The company had classified such employment as extra-hazardous. However, it did not limit its exception to death from *service* as an airplane pilot but extended it to *travel or flight*. The result is that had insured met his death while riding as a fare-paying passenger in a licensed commercial aircraft provided by an incorporated common carrier for passenger service and while such aircraft was operated by a licensed transport pilot and flying in a regular civil airway between definitely established airports, there would have been full coverage. But if he had met death while riding as a passenger in a chartered plane, or while piloting or riding as a passenger in his own plane, or as a pilot or passenger of any aircraft where he was not being paid for services as an employe or paying for his transportation, or if he was riding as a fare-paying passenger in an unlicensed commercial aircraft, or if licensed, while such aircraft was operated by an unlicensed transport pilot, or if not operated in a regular civil airway between definitely established airports, or probably in some other situation not here enumerated, the policy would be avoided, except as to an amount equal to the reserve on the policy, less any indebtedness thereon. There are thus many circumstances under which he could have met his death in flight, in addition to the one where he could have been killed in service as an aircraft pilot. Under said § 61.30 (§ 3402), the special form of policy permitted was limited to extra-hazardous employment and, as applied to our situation here, to services as an aircraft pilot. Defendant, by inserting the words "travel or flight" in the endorsement, limited its liability far beyond mere service.

Counsel for defendant suggests that the words "service, travel or flight" are merely *ejusdem generis*. We are not impressed with the suggestion. As we have shown, the words "travel or flight" in any species of aircraft have quite a different meaning from "service" on any species of aircraft. Their meaning is not limited to a hazardous occupation, and, as § 61.30 (§ 3402) permits the issuance

of a special form of policy on the life of a person employed in an occupation classed by the company as extra-hazardous only, it is clear that defendant has incorporated in its rider or endorsement restrictions which are prohibited under the statute. At the time the policy in question was issued, the statutes of this state prohibited the issuance of policies containing aviation exclusion riders. The unauthorized words inserted created in effect an aviation exclusion rider, which was to reduce defendant's liability not only because of insured's "service in certain designated occupations," but because his death resulted directly or indirectly from travel or flight in any species of aircraft and gave protection to fare-paying passengers only under certain conditions. On the filing back of the policy itself, in bold face, were these words:

"Extra Hazardous Policy

"In the event of death by aviation, benefits limited to the reserve on this policy."

That statement was not complete or correct as to the character of the rider or endorsement on the policy.

The effect of the insertion by defendant of the unauthorized words "travel or flight" in the rider or endorsement is the question which confronts us. Plaintiff argues that the words "travel or flight" make the endorsement completely void, are contrary to the statutes of this state, and that she is therefore entitled to recover the face amount of the policy. In addition to claiming that the words *"service, travel or flight"* are *ejusdem generis*, defendant contends that the words are severable, and that, since death resulted from service, the endorsement is valid and the words "travel or flight" mere surplusage that may and should be ignored.

Any provision in a policy of insurance which is contrary to the statutory provisions is ineffective. Heim v. American Alliance Ins. Co. 147 Minn. 283, 180 N. W. 225, 1022; Maryland Casualty Co. v. American Lbr. & Wrecking Co. Inc. 204 Minn. 43, 282 N. W. 806, 119 A. L. R. 1269; Commercial Accident Ins. Co. v. Wells, 156

Minn. 116, 194 N. W. 22. In the case of Maryland Casualty Co. the court said (204 Minn. 47, 282 N. W. 808):

"* * * If there is no statute governing the form and content of the policy, the parties are free to incorporate such provisions and conditions as they desire, Juster v. John Hancock Mut. L. Ins. Co. 194 Minn. 382, 260 N. W. 493, subject only to such restrictions of law as are other parties to a voluntary contract."

In Clark v. Rochester Farmers Mut. F. Ins. Co. 161 Minn. 476, 479, 201 N. W. 930, 931, this statement is made:

"Although a policy of insurance is a contract, it does not stand on the same footing as ordinary contracts. The business of insurance is quasi public in character; hence it is competent for the state, in the exercise of the police power, to regulate it for the protection of the public." State v. Beardsley, 88 Minn. 20, 25, 92 N. W. 472; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 59 L. ed. 1011, L. R. A. 1915C, 1189; Itasca Paper Co. v. Niagara F. Ins. Co. 175 Minn. 73, 220 N. W. 425.

Before it issued the policy in question, defendant intended and attempted to comply with the statutory provisions of this state, and, with this in mind, consulted the then commissioner of insurance of the state relative to the form of policy it would be permitted to use to embody a special aviation clause. The commissioner made suggestions as to what form the policy must take to comply with the statutes. His suggested form possessed infirmities similar to those found in the policy that was issued. Thereupon defendant submitted two forms to the commissioner for his approval. He neither approved nor disapproved them, simply placed them on file. As the commissioner did not disapprove, defendant felt free to use the forms it submitted, and the policy in question was in conformity with one of the forms so filed. This, however, does not improve defendant's legal situation. It affords no legal justification.

The commissioner lacked the power to change or waive the plain provisions of the statute. In 29 Am. Jur., Insurance, § 25, it is said:

"* * * There is, however, no doubt that an insurance commissioner has no power to approve a form of policy or rider which clearly contravenes the provisions of governing statutes."

Before the policy was issued, insured made an amendment to his application wherein he stated:

"* * * I agree to accept a policy containing special aviation clause, limiting the Company's liability as endorsed on page #6 thereof."

His agreement to accept a policy which violates the applicable statutory requirements cannot give validity to the illegal provisions. In 29 Am. Jur., Insurance, § 190, it is stated:

"It is axiomatic that the parties to an insurance contract, like the parties to contracts generally, cannot make a contract which is prohibited by law or contrary to public policy; and where there is a conflict between the law or statutory provisions on the one hand and the provisions of an insurance policy on the other, the former must prevail."

When the legislature has spoken on the form which a policy of insurance must take, such enactments declare the public policy of the state. In Heim v. American Alliance Ins. Co. 147 Minn. 287, 180 N. W. 226, *supra,* the court discusses this question in the following language:

"The statute is founded on public policy. It was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection that [sic] he might naturally suppose he was getting under his contract. The declaration of the legislature on the subject of forms of contracts of insurance, being within its constitutional powers, is the public policy of the state. Midway Realty Co. v. City of St. Paul, 124

Minn. 300, 145 N. W. 21. It is a salutary rule of law that, when a statute is founded upon public policy, those to whom it applies should not be permitted to waive its provisions. Fidelity & Casualty Co. v. Eickhoff, 63 Minn. 170, 178, 65 N. W. 351, 30 L. R. A. 586, 56 Am. St. [Rep.] 464; Reilly v. Franklin Ins. Co. 43 Wis. 449, 28 Am. Rep. 552; Emery v. Piscatauqua Ins. Co. 52 Me. 322."

Section 61.30 (§ 3402) outlines what must be included in every policy of life insurance and then specifically sets out the exceptions. One exception permitted the company to issue a special form of policy reducing the company's liability on the life of a person employed in an occupation classed by the company as "extra hazardous." This legislation expresses the public policy of the state. Contrary to the provisions of the statute, and therefore the public policy of the state, the rider or endorsement involved here was issued. Its provisions were not limited to service in a hazardous occupation. Certainly, that part of the rider or endorsement which goes beyond service in a hazardous occupation is void.

The question then arises whether the illegal part taints the whole rider or endorsement, or whether the provisions are severable so that the words "travel or flight" may be treated as surplusage, thus giving effect to the word "service."

In Hartford Acc. & Ind. Co. v. Dahl, 202 Minn. 410, 414, 278 N. W. 591, 593, this court said:

"Another matter argued by counsel deserves our attention. It is this: If it be assumed that the agreement of indemnity is void on the subject of waiver of statutory exemptions, is the entire contract affected thereby so as to nullify it *in toto?* The rule, of course, is well established that 'where a contract is illegal only in part, and the illegal part is severable, the remainder will be enforced.' 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1937) § 1881, and cases cited under note 90. Put in another form (see Simmer v. Simmer, 195 Minn. 1, 6, 261 N. W. 481), are 'the strands of agreement so inextricably woven together, the lawful with the unlawful, that the result is a seamless fabric which it is beyond our

power to divide so as to sever the lawful from the inhibition attending what is unlawful'? The legal principles involved and to be applied are there so thoroughly discussed and distinctions made between what is severable and what is not that no further comment is now deemed necessary. We think the contract is severable."

In Simmer v. Simmer, 195 Minn. 1, 5, 261 N. W. 481, 483, referred to in the Hartford Accident & Indemnity Co. case, *supra*, the court said:

"It is argued that the illegal promises are severable and therefore do not invalidate the whole contract. But by their own terms they were made in consideration 'of all the conditions of this agreement.' So also were the lawful promises. Hence the illicit is not severable from the licit, and the whole agreement is void. With stated exceptions, none of which is here applicable, the rule is that, 'where any part of a bilateral bargain is illegal, no promise can be enforced unless not only that promise is legal but a corresponding legal promise is, by the terms of the bargain, apportioned as consideration therefor, nor even in that case if the illegal portion of the bargain is an essential part of it.' Restatement, Contracts, § 607. Put in another way, the general rule is that where the illegality so far pervades the entire bargain that no set of its reciprocal promises can be said to be unaffected thereby, and unrelated thereto in respect to the inducement of consideration, the whole must fall."

The rider was issued in violation of a legislative act which specifies the provisions which must be contained in a policy of life insurance. It therefore offended the public policy of this state. In our view, the whole rider or endorsement is tainted with illegality and void.

Nothing can be gained by a new trial. The order appealed from is reversed with directions to the trial court to amend its conclusions of law so as to order judgment for plaintiff for the face amount of the policy.

Order reversed with directions.