## MILDRED C. ONSTAD (FORMERLY PROEBSTLE) v. STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS.[1]

April 9, 1948.

No. 34,536.

---

[1]Reported in 32 N. W. (2d) 185.

*Snyder, Gale, Hoke, Richards & Janes,* for appellant.

*Bundlie, Kelley, Finley & Maun* and *Mandt Torrison,* for respondent.

LORING, CHIEF JUSTICE.

This action was brought by the beneficiary of a $2,500 life insurance policy issued by defendant, a Massachusetts insurance company, licensed to do business in this state. Recovery was sought for the full amount of the policy. The defense was grounded upon an aviation exclusion rider.

At the close of the evidence, the court directed a verdict against defendant for the full amount of the policy with interest, on the ground that the policy was a Minnesota contract and that the aviation exclusion rider was void in Minnesota. Error is assigned on that holding.

The insured was a student aviator licensed as such on August 12, 1939, when one of defendant's agents called on him at his home in St. Paul. An application for insurance was made out and the first premium paid. The application and money paid were taken to the St. Paul office of defendant's company, whence the application was sent to the home office of the Massachusetts corporation. It issued the policy and returned it to the St. Paul office for delivery on condition that the insured sign the aviation exclusion rider in duplicate, one of the duplicates to be attached to the policy and the other to

be forwarded to the company. The agent was instructed to deliver the policy to the applicant only upon his signing the amendment or rider containing the aviation exclusion provisions. The rider provided:

"If the death of the insured under this policy or any policy issued in exchange herefor shall result directly or indirectly from being in or on, or operating or handling, whether as a passenger or otherwise, any kind of aircraft, or from falling therefrom or therewith, the Company's liability under this policy shall be limited to the insurance reserve thereon, computed according to the American Experience Table of Mortality with interest at three per centum per annum (3%) less any existing indebtedness, any provision of the policy to the contrary notwithstanding."

The company's agent went to the applicant's home in St. Paul, secured his signature on the amended application, and then and there delivered the policy. That was September 5, 1939. Subsequently, premiums were paid as they became due.

1. In view of our opinion in Shank v. Fidelity Mut. L. Ins. Co. 221 Minn. 124, 21 N. W. (2d) 235 (which, like the case at bar, involved a policy issued prior to the enactment of L. 1943, c. 156), we do not deem it necessary to discuss the provisions of the aviation rider. The rider herein involved was far broader in scope than the provision held void in that case because it went beyond the statutory provision for policies to be issued in hazardous occupations. Consequently, if the policy was a Minnesota contract, the trial court must be affirmed.

2. M. S. A. 60.27 provides:

"Every company, domestic or foreign, shall file with the commissioner its acceptance of the provisions of the insurance laws of the state of Minnesota, and its charter and any amendments thereto, and each such company shall be governed thereby and by those laws relative to corporations in general, so far as applicable and not otherwise specifically provided."

M. S. A. 60.28 provides:

"It shall be unlawful for any person, firm, or corporation to solicit or make, or aid in soliciting or making, any contract of insurance not authorized by the laws of this state. All contracts of insurance on property, lives, or interests in this state, shall be deemed to be made in this state."

Minn. St. 1941, 61.30, as it read at the time this policy was issued and delivered, reads in part as follows:

"* * * a special form of policy may be issued on the life of a person employed in an occupation classed by the company as extra hazardous or as leading to hazardous employment, which shall provide that service in certain designated occupations may reduce the company's liability under the policy to a certain designated amount not less than the full policy reserve;"

This is the same provision that was under consideration in the Shank case. Defendant takes the position that this contract was a Massachusetts contract and consequently not controlled by the Minnesota statutes. It argues that a "binding receipt" was issued to the insured upon his signing the application for the insurance; that it provided that the insurance would be in force and in effect from the time of his medical examination, if the application was accepted by the company at its home office in Massachusetts; that this provision was made prior to the time the amendment was signed by the insured before delivery of the policy; and that, therefore, the law of Massachusetts should govern it and that the "aviation rider" was valid in that state. We are not impressed with that contention. Defendant accepted the statutory terms on which it could conduct its insurance business in this state. It maintains an office in Minnesota and solicits business in this state. The insured was so solicited. The company could not make an insurance contract in this state contrary to its public policy, as announced in our statutes, which are applicable alike to domestic and foreign corporations. Heim v. American Alliance Ins. Co. 147 Minn. 283, 180 N. W. 225, 1022. Those statutes became a condition of doing business here and a part

of any contract of insurance made by defendant in Minnesota. When an insurance company comes into Minnesota to do business, agrees to abide by its laws, and, while exercising that privilege, solicits business therein, it will not be allowed to evade our laws by a statement in the contract which, in effect, attempts to provide that the contract shall be deemed to be made in another state. New England Mut. L. Ins. Co. v. Olin (7 Cir.) (1940) 114 F. (2d) 131, 137; Mutual L. Ins. Co. v. Hill, 193 U. S. 551, 24 S. Ct. 538, 48 L. ed. 788.

The facts in this case show that even though defendant may not have intended to be bound by the laws of Minnesota, it in fact did so bind itself, because the issuance and delivery of the policy was actually made in Minnesota. Northwestern Mut. L. Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. ed. 419, 38 L.R.A. (N.S.) 57. The agent here was instructed to take the policy to the applicant and not to deliver it unless he signed the amended application. Defendant's agent testified that "It is not a complete transaction unless it [the amended application] is [signed]." That conclusion seems obvious to us.

Judgment affirmed.