WILD RICE LUMBER COMPANY v. ROYAL INSURANCE COMPANY
OF LIVERPOOL and Others.[1]

August 10, 1906.

Nos. 14,670, 14,724—(84, 85).

**Minnesota Standard Policy.**

The form of fire insurance policy prescribed by chapter 175, p. 417, Laws 1895, as amended by chapter 254, p. 468, Laws 1897, contains the only terms and conditions which can be incorporated in a contract of fire insurance. Only the changes which are specifically authorized by section 53, c. 254, p. 468, Laws 1897, may be made in the statutory form.

**Modification in Form.**

Section 52, c. 175, p. 417, Laws 1895, does not authorize the parties to modify or add to the statutory form. Its purpose is to require that all the conditions of the insurance shall appear in one written instrument.

**Unauthorized Addition.**

A fire insurance company has no authority to attach to the standard form of policy a clause by which the insured warrants the maintenance of a designated clear space about the insured premises.

**Space Clause.**

Such a "space clause," attached as a rider, is void in so far as the warranty is concerned; but, as the statute expressly authorizes an insurance company to print or use in its policies forms of description and specification of the property insured, the so-called "space clause" may contain effective language limiting the general descriptive language of the policy.

Action in the district court for Norman county to recover from each of the eleven defendants upon their several policies of fire insurance the proportionate share due from each. The case was tried before Grindeland, J., who found in favor of plaintiff and against defendants for the aggregate sum of $233.94. From a judgment entered pursuant to the findings, both parties appealed. Affirmed on both appeals.

*John Lind & A. Ueland,* for plaintiff.

*M. H. Boutelle* and *N. H. Chase,* for defendants.

[1] Reported in 108 N. W. 871.

ELLIOTT, J.

The Wild Rice Lumber Company was the proprietor of a sawmill and lumber yard situated in the village of Ada. During the year 1904 certain insurance companies issued policies agreeing to indemnify the lumber company from loss by fire upon the lumber described therein. The policies were all in the form prescribed by chapter 175, p. 417, Laws 1895, as amended by chapter 254, p. 468, Laws 1897. So far as at present material, the policies were identical in form and contained the following description of the property insured.

> On lumber (pickets, posts, timber, lath, and shingles, if any) owned by the Wild Rice Lumber Company or held in trust or on commission, or sold, but not delivered, piled on blocks [numbers here inserted], and in streets and alleys adjacent to or connecting with said blocks, in Ada, Minnesota.

Each policy also contained the following statement, known as the "space clause":

> In consideration of the issuance of this policy and the basis upon which the rate of premium is fixed, the assured warrants and agrees that a continuous clear space of 200 feet shall hereafter be maintained between the property hereby insured and any woodworking or manufacturing establishment, and that said space shall not be used for handling or piling lumber thereon for temporary purposes, tramways upon which lumber is not piled, alone excepted. But this warranty shall not be construed to prohibit loading or unloading within, nor the transportation of lumber or timber products across such clear space; it being especially understood and agreed by the assured that any violation of this warranty shall render this policy null and void.

The sawmill was situated partly on block 42 and partly on a street adjacent to this block in the village of Ada. From this mill was constructed a chute or incline eight feet long, which was spiked to the mill building and led to and was permanently fastened to a platform built of lumber. Along the center of this platform, from end to end, was constructed a permanent roller tramway. The platform extended in a straight line away from the mill to a point two hundred

twelve feet from the mill. One half of the platform was on block 42 and a street adjoining this block; the other half was on a street which adjoins block 42 and also adjoins block 34 in the village of Ada.

On August 15, 1904, there was a loss by fire on lumber belonging to the Wild Rice Lumber Company to the amount of $4,068. Of this amount, $3,818 was on lumber which was located less than two hundred feet from the sawmill. The Home Insurance Company paid its pro rata share of the loss, but all the other companies denied liability on the grounds (1) that the lumber destroyed was not covered by the policy, and (2) that the policy had ceased to be in force at the time of the fire because of a breach of the warranties contained in the space clause. All the companies were joined as defendants in an action to recover the full amount of the loss. The trial court found that the policies were in force, that the manner in which the space between the yard and the mill was used was known to the company before the policy was issued, that the right to claim a breach of warranty had been waived, and that the policies did not cover lumber located less than two hundred feet from the mill. Judgment was ordered for the plaintiff for $233.94, being the value of the lumber which was beyond the two hundred-foot limit. From this judgment, the plaintiff and defendants appealed.

The plaintiff contends that the court erred in finding (a) that the lumber destroyed which at the time of the fire, was situated less than two hundred feet from the sawmill was not covered by the policy, and (b) that only the lumber destroyed which was situated more than two hundred feet from the sawmill was covered by the policy. The defendants assign error on the finding (1) that any of the property destroyed was covered by the policy, and (2) that there had been a waiver of the right to claim a breach of warranty. The questions raised by both appeals are all determined by the solution of two questions, the validity of the space clause and the proper construction of the provisions of the policy which describe the property insured.

1. If the insurance companies had no right under the statute to require the insured to warrant the maintenance of a continuous clear space of two hundred feet between the insured property and the mill, numerous subsidiary questions raised and elaborately argued by counsel

are eliminated. The lumber company contends that the provision injects forbidden conditions into the standard policy, and the insurance companies that it merely determines one of the "conditions of insurance" authorized by section 52, c. 175, p. 417, Laws 1895, and is also expressly authorized by section 1, subd. 2, c. 254, p. 468, Laws 1897.

A glance at the history of the standard form of policy makes it very clear that the legislature of this state intended to deprive fire insurance companies of the right to add to or change the terms and conditions of the prescribed form. The right to make such changes and additions is one of the principal distinguishing characteristics of the two classes of standard forms. The Massachusetts and New York standard policies went into effect about the same time and have formed the models for the legislation in other states. Both states were seeking uniformity of insurance contracts, but Massachusetts did not attempt to deprive the parties of the liberty of making their own contracts. It merely adopted a model which the parties were at liberty to modify at will. But New York went further and determined the form which all must use with the privilege of adopting certain prescribed clauses to cover particular conditions. The Minnesota act of 1889 imposed upon the insurance commissioner the duty of preparing a standard form of policy which should be obligatory after that year. The New York form was prepared and went into use but the act was declared unconstitutional because it attempted to delegate legislative powers to the insurance commissioner. In 1895 the legislature adopted the Massachusetts form with such modifications as were necessary to avoid conflict with the valued policy law. Section 53 provided that

> A company may write upon the margin or across the face of the policy, or write or print in type not smaller than long primer upon separate slips or riders to be attached thereto provisions adding to or modifying those contained in the standard form.

The insurance companies then adopted a general rider which embraced substantially all the provisions of the New York form. But the legislature of 1897, amending section 53, c. 175, p. 417, Laws 1895, in express terms prohibited the making of any changes except such as

were specifically enumerated in the statute. The conclusion is inevitable that the legislature intended to deprive the parties of the right to make insurance contracts in any form except as prescribed by the statute. The statute (Laws 1897, p. 468, c. 254, § 53) provides that:

No fire insurance company shall issue fire insurance policies on property in this state other than those of the standard form herein set forth, except as follows, to wit:

First. A company may print on or in its policies its name, location and date of incorporation, the amount of its paid-up capital stock, the names of its officers and agents, the number and date of the policy, and if it is issued through an agent, the words, "this policy shall not be valid until countersigned by the duly authorized agent of the company at ————."

Second. A company may print or use in its policies printed forms of description and specification of the property insured, including permits for the use of electricity, gasolene, or storage of other extra hazardous product or material, also for repairs or improvements for the operation or ceasing to operate and for the maintenance of sprinkling or other improvements.

Third. A company insuring against damage by lightning may print in the clause enumerating the perils insured against, the additional words: "Also any damage by lightning whether fire ensues or not" and in the clause providing for apportionment of loss in case of other insurance the words, "whether by fire, lightning or both."

Fourth. A company incorporated or formed in the state may print in its policies any provisions which it is authorized or required by law to insert therein; and any company not incorporated or formed in this state may, with the approval of the insurance commissioner, so print any provision required by its charter or deed of settlement or by the laws of its own state or country, not contrary to the laws of this state.

Fifth. The blanks in said standard form may be filled in print or in writing.

Sixth. A company may print upon policies issued in compliance with the preceding provisions of this section, the words "Minnesota Standard Policy."

Seventh. No provision shall be attached to or included in said policy limiting the amount to be paid in case of total loss on buildings to less than the amount of insurance on the same.

The prescribed form with the changes thus authorized is the only form of fire insurance contract authorized by the laws of the state.

But the insurance companies contend that the space clause is in common use and is authorized by the language of section 52, c. 175, p. 417, Laws 1895. The authorities cited are, with the exception of one from an intermediate New York court, from states which have no standard form, and common use can, of course, confer no rights in the face of the statute. The act of 1895, as we have seen, permitted the contract to be modified by riders, subject to the prohibitions contained in section 25 (page 401) ; but it required the policy to contain the entire contract. Section 52 provided that

The conditions of insurance shall be stated in full and neither the application of the insured nor the bylaws of the company shall be considered as a warranty or a part of the contract except so far as they are incorporated in full into the policy.

Coleman v. Retail L. Ins. Assn., 77 Minn. 31, 79 N. W. 588; Kollitz v. Equitable Mut. Fire Ins. Co., 92 Minn. 234, 99 N. W. 892. This section was not repealed by the amendment of 1897, but it cannot be used to restrict the express requirement of the amendatory act. Under the act of 1895, the conditions of insurance were required to be stated in full in the policy and this included such as were prescribed by the statutory form and also such additions and modifications as were made by the parties. Changes and additions are now forbidden except as specifically permitted, but the policy must still contain all the conditions of insurance. Nor is the space clause authorized by subdivision 2 of section 53 as amended. To hold that its provisions are included within the "other improvements" there referred to would be to give the words a strained and unnatural construction.

2. The parties were not authorized to insert in the policy a provision not contained in the statutory form or expressly authorized by the statute, whereby the insured warranted the maintenance of certain conditions about the premises. But there seems to be no reason why reference may not be made to the added clause for the description

and identification of the property which was intended to be insured. The policy must contain a complete description of the property and the statute authorizes the company to print on its policy forms of description and specification of the property insured. In connection with property ·of this character, location may be an essential element of description. By reference to the space clause we find that the subject-matter of the general clause:

> Lumber  *  *  *  piled on blocks  *  *  *  and in streets. and alleys adjacent to or connecting said blocks in Ada

is limited to the lumber which is piled upon that part of the blocks. which is more than two hundred feet from any woodworking or manufacturing establishment. This was undoubtedly the intention of the parties. Without the limitation the general language of the descriptive part of the policy would cover lumber situated in the mill itself. The mill was on block 42 and part of an adjacent street. One policy for illustration, by the general clause covered lumber. piled on blocks 11, 42, and 43, and in streets and alleys adjacent to or connected with such blocks. The rate upon lumber in the mill or within two hundred feet of the mill was $9.50 per $100, while upon lumber piled more than two hundred feet from the mill it was only $2.85, the rate paid by the plaintiff. The clause recites that

> In consideration of the issuance of this policy, and the basis. upon which the rate of premium is fixed, the assured warrants and agrees that a continuous clear space of two hundred feet shall hereafter be maintained between the property hereby insured and any woodworking or manufacturing establishment.

The warranty may be held ineffective, but the language clearly shows. that the parties did not understand that lumber piled within two hundred feet of the mill was insured. The insured, under the decision of the trial court, got exactly what it paid for.

The judgment of the trial court is affirmed on both appeals.