NORTHWESTERN NATIONAL INSURANCE COMPANY, Appellant, vs. MORTENSEN, Commissioner of Insurance, and another, Respondents.

*January 11—February 7, 1939.*

378

For the appellant there were briefs by *Ekern & Meyers,*
attorneys, and *Herbert H. Naujoks* and *L. F. Binkley* of
counsel, all of Chicago, and oral argument by *Mr. Naujoks*
and *Mr. Binkley.*

· For the respondents there was a brief by the *Attorney
General, Warren H. Resh,* assistant attorney general, attor-
neys for *Harry J. Mortensen,* commissioner of insurance,
and *Olin & Butler* of Madison, attorneys for the Fire Insur-
ance Rating Bureau, and *R. M. Rieser* of Madison of coun-
sel, and oral argument by *Mr. Rieser* and *Mr. Resh.*

FAIRCHILD, J.   The plaintiff seeks to enjoin the commis-
sioner of insurance and the fire insurance rating bureau
from applying the fire insurance rating act to marine in-
surance policies, and contends that a certain fine-arts policy
which it has issued to the Layton Art Gallery of Milwaukee
is a form of marine insurance and not subject to the rating
law.   The state, on the other hand, insists that all policies
which insure against fire, whether or not within the defini-
tion of marine policies, are subject to the fire insurance rat-
ing act as to the premiums applicable to the fire risks cov-
ered by the policy.

Sec. 203.33, Stats., provides that except as specified in
sec. 203.49, every insurer licensed to insure against direct
or consequential loss by fire and lightning, windstorm, and
hail, shall maintain an actuarial bureau or be a member of
such a bureau.   Since it was originally enacted, the section
has been amended to include insurance against explosion,
riot, civil commotion, damage to other kinds of property
from aircraft, and self-propelled vehicles, and smoke dam-

age, when written supplemental to or in combination with a policy covering direct or consequential fire loss.

Sec. 203.49, Stats., provides that the rating law shall not apply to town mutual companies, nor to domestic mutual cyclone insurance companies, nor to contracts for automobile insurance, nor to the rolling stock of railroads or property in transit while in the possession of railroad companies or other common carriers, nor to the property of such common carriers used or employed by them in their business of carrying freight, merchandise, or passengers.

The plaintiff is licensed to write fire insurance, and is therefore, under sec. 203.33, Stats., subject to the rating law. It is also licensed to write marine insurance. Sec. 203.42 provides that no insurer shall intentionally charge a different rate from that which has been filed with the bureau. Does this mean that the plaintiff, being subject to the rating act because licensed to write fire insurance, must file rates for its marine policies also, excepting only such as relate to property of or in the hands of common carriers? It seems apparent that the legislature did not so intend, and that, as the plaintiff contends, the legislature recognized the existence of marine insurance as something entirely distinct from fire insurance. In legislating with reference to fire insurance it was not necessary to except from the fire rating act marine insurance, because the distinction between the two types of insurance existed without specific provision.

But it also is apparent that insurance companies cannot by custom so expand and distort the concept of marine insurance as to modify their obligation to schedule their fire insurance rates. The exception in favor of marine insurance extends only to traditional forms of such insurance, to the type of policy which is typical of the class, and not to any recently developed or unusual type of coverage bearing a close resemblance to fire insurance.

The legislative concept of marine insurance is disclosed by the definition in sec. 201.04, Stats., which authorizes the formation of insurance companies for certain purposes. In sec. 201.04 (2) there is the following definition:

"*Marine insurance.*—Vessels, freight, goods, moneys, effects and money loaned on bottomry and respondentia, against the perils of the seas and other perils usually insured against by marine insurance, including the risks of inland transportation and navigation."

Historically, marine insurance always involved some type of vessel, and the risks insured against were the perils incident to transportation by water. In Winter, Marine Insurance, p. 63, it is said:

"Every marine insurance transaction involves some type of vessel. Whether the insurance be on hull, freight or cargo, there is a vessel as the base of the insurance."

The term "inland marine insurance" appears to be comparatively new in the insurance world. As late as 1909 the term evidently related to insurance against the risks of navigation on lakes, rivers, and canals. At or about the time of the World War the scope of such policies seems to have been expanded to include risks of actual or technical transportation on land.

So far as we can discover, this enlargement to include transportation by land is the furthest development that the subject has had by ordinary custom and usage. Marine insurance companies may have developed forms of policies which cover risks only incidentally related to transportation, but we do not think that such policies are so distinctively marine insurance, and so different in subject matter from fire insurance, as to be included by implication within the exceptions to the fire insurance rating act. In fact, it is doubtful whether inland transportation insurance is so distinctively

marine insurance as to be excluded from the fire insurance rating act by implication, especially in view of the fact that the legislature has seen fit to include in the rating law an express exception for rolling stock of railroads or property in transit while in the possession of railroad companies or other common carriers, and the property of such common carriers used or employed by them in their business of carrying freight, merchandise, or passengers, sec. 203.49, Stats.

It must be held that marine insurance relating to transportation by water is, by its very nature, excepted from the provisions of the rating law, but that inland marine insurance not relating to transportation by water is excepted only so far as it comes within the provisions of sec. 203.49, Stats. Difficulties may arise in determining whether a particular policy of insurance is primarily a marine or common-carrier policy, or primarily a policy protecting property in location and only incidentally a transportation policy. But there is no such difficulty in the present case.

The Layton Art Gallery policy protects the property only while located either at the gallery or at the vocational school. The coverage may be extended to include transportation risks, but only upon notice and payment of additional premium. The policy is not marine insurance, nor does it come within the exception in sec. 203.49, Stats. In view of the essential nature of marine insurance, we do not consider that the fact that the insurance is against risks other than fire makes this a marine policy when none of the risks of transportation are insured against. The rating bureau, the commissioner of insurance, and the circuit court properly concluded that the policy was subject to the provisions of the fire insurance rating law.

This conclusion is strengthened when we take into consideration the difficulty of making the rating law effective if fire and marine companies were permitted to write, in their marine departments, insurance against loss by fire,

lightning, windstorm, hail, and sprinkler leakage upon property at a fixed location, without reporting the rates which they were charging to the actuarial bureaus.

From a study of the report of the interim committee of the legislature which investigated the problem of fire insurance regulation in 1931, it is apparent that one of the purposes of the rating law was to prevent discrimination in fire insurance rates. To this end, companies licensed to write fire insurance have been required to report their premiums and to charge the same rate for all similar risks. This purpose would be frustrated if the fire and marine companies had only to write a policy in the form of marine insurance in order to charge a rate different from that on file for substantially the same coverage in the form of fire insurance.

There remains only the question whether the plaintiff is required by sec. 203.41, Stats., to file a deviation because of the indorsement providing that $50 shall be deducted from each loss and the premium reduced accordingly. Such an indorsement is authorized by sec. 201.20. Sec. 203.41 provides that any insurer may file a deviation upon any class of risk from the rates or any underwriting rules established by the actuarial bureau of which it is a member, but any deviation of a rate shall be by a percentage increase or decrease if on specifically rated risks, and in all cases, including specifically rated risks and others, the deviation shall be reasonable and uniform in its application to all risks of the same class and regional classification. Two purposes sought to be accomplished by sec. 203.41 are apparent from a study of that section in connection with the reports of the interim committee. It was thought that the provision for deviation would insure healthy competition in the making of rates. But it was also thought that the provision would prevent discrimination, by requiring deviations to be applied uniformly.

Whether a reduction in premium based upon a deductible clause in the policy constitutes a deviation within the meaning of sec. 203.41, Stats., we do not now decide. That would appear to be a matter for determination in the first instance by the insurance commissioner, within the rule-making power conferred by sec. 200.03 (2), Stats. Whatever his ruling, it may be attacked in the manner provided by statute, and not otherwise. The subject is clearly within his jurisdiction, and the question as to what constitutes a deviation is not a proper matter for consideration in an action to restrain and enjoin.

The commissioner acted within his authority when he ordered the plaintiff to comply with the fire insurance rating act with respect to the Layton Art Gallery policy, and the trial court was correct in refusing to issue the injunction relating to that policy. The court was also correct in denying the prayer for an injunction applicable to all marine insurance. Under the facts in the record, there was no occasion for issuing an injunction against interfering with policies of marine insurance in general, including policies insuring against the risks of inland transportation and navigation. Whether a policy of insurance constitutes a marine policy must be determined upon the facts of the particular case.

*By the Court.*—Judgment affirmed.