## FIREMAN'S FUND INS. CO. v. VERMES CREDIT JEWELRY, Inc.

### No. 14138.

United States Court of Appeals
Eighth Circuit.

Nov. 24, 1950.

Rehearing Denied Dec. 12, 1950.

John S. Morrison, Minneapolis, Minn., (G. P. Mahoney, Minneapolis, Minn., on the brief), for appellant.

Benedict S. Deinard, Minneapolis, Minn., for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an action to recover for a fire loss covered by a "jewelers' block policy" insuring a stock of jewelry in a store on Hennepin Avenue in Minneapolis, Minnesota, against all risks, including fire. The policy contained a warranty that the insured would, while its store was closed, keep a certain percentage of its jewelry in a safe. The District Court ruled that this warranty was ineffective in so far as the policy insured the stock in the store against loss by fire, because of the Minnesota standard fire policy law, Section 65.01, Minnesota Statutes Annotated, and that a breach of the warranty was no defense. The court directed a verdict for the insured, and the insurance company has appealed from the resulting judgment.

The insured (appellee) is a Minnesota corporation which was engaged in the retail jewelry business in a store on Hennepin Avenue in Minneapolis. The insurance company (appellant) is a California corporation licensed to do business in Minnesota. The policy in suit is a "jewelers' block policy" issued by the company November 23, 1948, for the term of one year, for a premium of $754.

A fire occurred, while the store was closed, which damaged the stock to the extent of more than $20,000. At the time of the fire, the insured did not have in its safe the percentage of the jewelry required by the warranty. The jewelry which was in the safe was undamaged. Proofs of loss were duly furnished by the insured. The insurance company denied liability. The insured brought this action to recover $20,000, the face of the policy. The insurance company asserted as a defense the breach of the warranty. The insured contended that the warranty could not be availed of to defeat its claim, because of the Minnesota standard fire policy law, Section 65.01, M. S.A. The insurance company, in effect, contended that the policy was an inland marine policy which insured against a combination of inseparable risks, rather than an aggregation of separable risks; that it was not a fire policy and was not subject to Section 65.01.

The precise question for decision is whether Section 65.01, relating to the form and content of fire policies issued in Minnesota, is applicable to a "jewelers' block policy" in so far as it insures a stock of jewelry in a fixed location against loss by fire. The District Court was of the

opinion that to the extent the fire coverage of the policy was the full equivalent of the coverage provided for by the Minnesota standard fire policy law, the insured was entitled to the benefit and protection of that law.

The standard fire policy law, Section 65.01, has been in existence in Minnesota for more than half a century. It prohibits the use in fire policies of limitations, conditions or warranties not expressly authorized.[1]

In Heim v. American Alliance Insurance Company of New York, 147 Minn. 283, 288, 180 N.W. 225, 227, 1022, the Supreme Court of Minnesota said: "In prescribing the form of standard policy, the Legislature sought to secure uniformity in all contracts of fire insurance by requiring all companies to use the same form of policy instead of as many different forms as there were companies writing insurance. Its use is compulsory. With such changes as are authorized by statute, it is the only form of fire insurance contract which may lawfully be used in this state. Wild Rice Lumber Co. v. Royal Ins. Co., 99 Minn. 190, 108 N.W. 871. Its provisions not only constitute the contract between the insurer and the insured, but the law governing the rights of the parties as well. Straker v. Phenix Ins. Co., 101 Wis. 413, 77 N.W. 752; Hronish v. Home Ins. Co., 33 S.D. 428, 146 N.W. 588. The statute does not prohibit a company from printing in or attaching to the policy terms or conditions not found in the standard form, provided they are not inconsistent with or a waiver of any of the provisions of such form. So far as the conditions and provisions of the form go they are controlling, and may not be omitted, changed, or waived, though provisions not conflicting with them may be added when necessary to express the terms of a contract of insurance which is au-

thorized by the statute. Bourgeois v. Northwestern Nat. Ins. Co., 86 Wis. 606, 57 N.W. 347."

The policy in the Heim case was a fire policy with an attached rider covering loss of rents, "to be computed from the date of the occurrence of said fire, and to be determined by the time it would require to put the premises in tenantable condition." Heim suffered a loss of rents amounting to $1,245.31. If the rider was effective, the insured was entitled to only $187.46. The standard form of fire policy at that time contained nothing relating to insurance against loss of rents. The Legislature had in 1909 authorized the use of forms for rent coverage, without prescribing them. The question was whether the company could insert a clause, not specifically authorized by statute, which had the effect of limiting its liability to less than the actual loss and less than the insurance purchased. The Supreme Court of Minnesota held the rider to be ineffective. The court said, page 289 of 147 Minn., page 227 of 180 N.W.: "The use of such a rider is not specifically authorized by the statute; the limitation upon the liability of the insurer which it contains is not in harmony with the policy of the Legislature respecting fire insurance, and the conclusion follows that such limitation cannot be given effect."

■ It seems clear that with respect to fire insurance contracts written in Minnesota, any warranty, limitation or condition which is not specifically authorized by statute and is not in harmony with the letter or spirit of the laws of Minnesota relating to fire insurance cannot be given effect.

■■ Whether a policy of insurance is a fire insurance contract, we think, depends not upon what the policy is labeled or how the insurance is classified, but upon the risk or risks which are insured against. See Northwestern Nat. Ins. Co. of Mil-

1. "65.01 Standard fire policy.
    "No fire company shall issue on property in this state any policy other than the standard form herein set forth, the blanks for which may be filled in print or in writing, and no condition, stipulation or term, other than those therein pro-

vided for, whether as to jurisdiction, limitation, magistrate, certificate or otherwise, shall be valid if inserted in any such policy, except as follows:
    *    *    *    *    *    *"
    No warranty such as that in suit is included in the exceptions.

waukee v. Mortensen, 230 Wis. 377, 284 N.W. 13, 16-17. It seems safe to say that a Minnesota policy insuring a stock of goods at a fixed location against loss by fire is, to that extent at least, a fire insurance contract, even though it covers other risks and provides broader coverage in some respects against a fire loss than does the standard form. The fact that in 1921 the Legislature of Minnesota, in Chapter 342, Laws of Minnesota 1921 (now Sec. 65.02, M.S.A.), saw fit to except from the standard fire policy law insurance on motor vehicles against loss or damage by fire when combined in a single policy with other risks, Gendreau v. State Farm Fire Insurance Co., 206 Minn. 237, 288 N.W. 225, is persuasive that it was then believed that a policy covering multiple risks was not excepted from the standard fire policy law in so far as the policy covered loss by fire.

The insurance company argues, however, that recent State legislation has had the effect of making the standard fire policy law completely inapplicable to policies such as the policy in suit. The insurance company asserts that in 1947, Chapter 120, Laws of Minnesota 1947 [2], the Legislature, in defining inland marine insurance and establishing an inland marine insurance rating bureau, recognized that such insurance is of a different type than fire insurance; that the definition of "fire and allied lines of insurance" in subdivision 3 of § 2 of the Chapter, and the definition of "inland marine insurance" in subdivision 4, are mutually exclusive; that the Chapter repealed all laws and parts of laws which were inconsistent with its provisions; that the Legislature, also, in 1947, by Chapter 295, Laws of Minnesota 1947, amended Section 60.29, Minn. Stat. 1945, by adding to paragraph (2) of subdivision 1 of Section 60.29 the words "and including all personal property floater risks and inland marine risks"; that the writing of these types of insurance was authorized by law and was regulated by an order of the Insurance Commissioner of Minnesota made in 1942, which includes "jewelers' block policies" under "personal property floater risks," and classifies such risks in the kinds of risks which "marine and/or transportation policies may cover * * *."

■ It seems to us, as it did to the District Court, that, while the writing of a "jewelers' block policy" by a qualified insurance company is authorized by Minnesota law, there is no express statutory provision permitting the insurer to limit or condition its liability for a fire loss on a stock of jewelry by inserting in such a policy a warranty not authorized by Section 65.01, M.S.A. If the insurance company in the instant case had issued one policy covering the risk of loss by fire and had covered all other risks in a separate policy, the insured could have recovered its loss regardless of the warranty in suit.

■ Viewing this case in the aspect most favorable to the insurance company, it presents, at most, a doubtful question of Minnesota law. Concededly, the Supreme Court of the State has not ruled upon it. The decision of the District Court is not contrary to any specific statutory provision nor to any State decision, nor to the weight of authority generally, nor

2. The title of this Act reads as follows: "An act relating to the regulation of rates for fire and allied lines of insurance and inland marine insurance; to rating organizations, advisory organizations, joint underwriting and joint reinsurance, and repealing Minnesota Statutes 1945, Sections 71.01 to 71.06, inclusive."

The first paragraph states: "Section 1. Purpose of act. The purpose of this act is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory, and to authorize and regulate cooperative ac-

tion among insurers in rate making and in other matters within the scope of this act. Nothing in this act is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit, or encourage except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This act shall be liberally interpreted to carry into effect the provisions of this section."

The Act is now Sections 70.60 to 70.75, M.S.A.

is it logically untenable. This Court has frequently said that it would accept the considered opinion of the trial judge as to a doubtful question of State law, unless convinced that it was erroneous. Magill v. Travelers Insurance Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Traders & General Insurance Co. v. Powell, 8 Cir., 177 F.2d 660, 668; Nolley v. Chicago, Milwaukee, St. Paul & Pac. R. Co., 8 Cir., 183 F.2d 566, 572.

We think the District Court reached not only a permissible but a correct conclusion.

The judgment appealed from is affirmed.