INSURANCE COMPANY OF NORTH AMERICA, et al. *v.* INSURANCE COMMISSION OF STATE OF MISSISSIPPI, et al.

No. 41314 December 7, 1959 116 So. 2d 224

*Bertram C. Dedman,* Philadelphia, Pa.; *Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellants.

*Joe T. Patterson, Atty. Gen., R. C. Griffin, Asst. Atty. Gen., Thomas H. Watkins,* Jackson, for appellees.

APPELLANT IN REPLY.

ETHRIDGE, J.

Appellants, Insurance Company of North America and its two wholly owned subsidiaries, filed with the Mississippi Insurance Commission three multiple-line, pack-

age insurance policies, containing both fire and casualty coverages. They each have a single, indivisible premium, so the component charge or premium for fire insurance could not be conformed to the fire rates fixed by the State Rating Bureau and approved by the Commission. Hence the Commission and the Circuit Court denied the filing. The issue is whether this type of policy can be filed under Section 1 of the Mississippi Casualty Rating Law of 1946, without complying with the Fire Rating Act of 1924. Miss. Laws 1946, Ch. 356, Miss. Laws 1948, Ch. 351, being Miss. Code 1942, Secs. 5834-01 to 5834-14; Miss. Laws 1924, Ch. 188, being Miss. Code Secs. 5816-5834. We think the Commission correctly denied the filing.

The 1924 Act established the Insurance Commission, for the purpose of fixing and approving fire insurance rates. It required the creation of a statutory Rating Bureau, to assist in establishing uniform, reasonable, and adequate rates which are not unfairly discriminatory. The rates are to be based on conflagration hazard and degree of protection against fire. The Commission must approve the rates. Stock fire insurance companies doing business in this state must be members of the Rating Bureau and must pay their proportionate share of its expenses. The Bureau makes a continuing study of the fire rate structure and recommends rates meeting these standards to the Commission for its approval. Fire rates must not discriminate between risks of essentially the same hazard and having substantially the same degree of protection against fire. Rates filed by the Bureau with the Commission and approved by it are the legal rates of premiums in fire insurance policies. It is "unlawful to charge any other rates than those so prescribed. . . ." Code Sec. 5823.

Until 1946 there was no statutory control of premium rates for any kind of insurance except indemnity against the risk of loss or damage by fire or lightning. The Cas-

ualty Insurance Act of 1946 did not amend or repeal the 1924 Fire Rating Act. It was directed toward the regulation of a different kind of insurance, namely, casualty insurance and its various subdivisions and combinations thereof. Under the Casualty Act, insurers can make individual filings. Contrary to the standards of physical conflagration hazard and protection against fire under the Fire Rating Act, rates for casualty insurance must take into account "past and prospective loss and country-wide expense experience, including the catastrophe hazards, if any, both within and without this state. . . ." Code Sec. 5834-02(b).

In 1950 appellants began writing their Homeowners Policies, which are multiple-line package policies for dwellings. This policy combines in one contract, at a single premium for the combined coverages, insurance on both real and personal property from the perils of fire, lightning, windstorm, and hail, etc. It also protects against theft and comprehensive personal liability, and provides for medical payments. The three types of Homeowner policies vary in the area of coverage, but in brief contain, in a single-premium package, protection against both fire and casualty insurance risks.

William A. Francis, Assistant Secretary of North America, testified that appellants considered and used as a guide the existing dwelling rates for fire and extended coverage insurance in the determination of initial premiums for these policies, but once the indivisible premium was established, each component of it lost its identity, and the premium is considered as an entity. The loss experience on the policy is different from that on straight fire insurance. Appellants write these Homeowners policies in 46 states. On a country-wide basis Francis stated the proportion of all losses under these policies attributable to fire is 37½ per cent. The policy includes "the standard 165 lines of the fire insurance policy." He said that, if appellants filed as a component

element of the policies its fire premium, it would increase the cost of doing business under them and would eliminate the considerable savings to insureds. The premium would be changed in the future on the basis of losses under the Homeowners policies as a whole. Francis testified that appellants could file with the Bureau the initial fire premium, but he did not think the Bureau would accept it, and North America would not be willing to do it. The premium is now single and indivisible. Appellants take the position they should not pay any assessment on their premiums from Homeowner Policies to support the State Rating Bureau, even though they write fire insurance coverage under them; and that by negotiated agreement, they could work out their share of support of the state Fire Marshall's office. Code Sec. 5704.

Other insurers have made filings with the Commission of "comprehensive dwelling policies," which protect fire and casualty risks, but itemize the component elements of the premiums, and conform the fire rates to those fixed by the State Rating Bureau. See Filing Requirements of Mississippi Insurance Commission, Rule IV. Appellants think such policies are not as effective or comprehensive as their Homeowner contracts.

Appellants base their claim for a right to file their Homeowner policies under the 1946 Casualty Insurance Act, on one sentence (the designation clause) in Sec. 5834-01 of that statute: "If any kind of insurance, subdivision or combination thereof, or type of coverage, subject to this act, is also subject to regulations by another rate regulatory act of this state, an insurer to which both acts are otherwise applicable shall file with the commission a designation as to which rate regulatory act shall be applicable."

It is argued that this provision authorizes appellants to designate which regulatory act is applicable to their Homeowner policy, because it is a new "kind of insur-

ance'' which is subject both to the casualty and fire rating acts.

The Commission's order of June 11, 1958 found that the policy in question contains ''a substantial amount of fire coverage,'' although the rates of premiums are indivisible. The agency held the proposed filings were in conflict with the 1924 Fire Rating Act, which requires fire premiums to be uniform; and lack of uniformity and discrimination in fire rates under this policy could not be detected or prevented by the Commission. The Commission stated the policies are not a ''kind of insurance'' subject to both acts. Moreover, it said, even if appellants' contention were correct, the designation would be subject to the Commission's approval, and it disapproved such filing, holding the separate rates of fire premiums must be processed under the Fire Rating Law.

██ █ We do not think that the Legislature intended by the quoted sentence in Section 1 of the Casualty Insurance Act to amend or repeal *pro tanto* the rate regulatory system for fire insurance premiums. The allowance of a filing of these policies under the Casualty Act would, in effect, do that. It is undisputed that the policies contain a substantial amount of fire insurance. There could be no uniformity in fire insurance premiums promulgated by the Commission, if appellants were permitted to file these policies under the Casualty Act with an indivisible premium. The Commission would have no way of determining whether there was discrimination in the rates, or whether they were fair and reasonable. Northwestern National Ins. Co. of Milwaukee v. Mortenson, 230 Wis. 377, 284 N. W. 13, 17 (1939). ██ █ Moreover, appellants admittedly base the premiums upon loss experience. That is not the statutory criterion for the fixing of fire premium rates. Under Code Sec. 5823, one of the foundations of such rates is entirely different: Uniformity is based upon risks of essentialy the

same hazard and degree of protection against fire. These standards prescribed by the Legislature are clear and reasonable. The suggested reading of Section 1 of the Casualty Act would repeal or at least weaken them *pro tanto* as to these policies.

██ █ Moreover, the 1924 Fire Rating Act must be construed together with the Casualty Act, so as to reconcile and give full effect to all provisions in both where reasonably possible. Appellants' argument requires an interpretation which would authorize or permit discrimination in fire rates and would permit them to be based upon a standard contray to the express statutory criteria.

██ █ Furthermore, Homeowners policies are not a "kind of insurance" subject to both acts under Section 1 of the Casualty Act. The three traditional kinds of insurance are fire, casualty and marine, with many subdivisions and combinations of subdivisions of each kind of insurance. The quoted sentence is applicable to one kind of insurance or subdivision thereof which is subject to regulation by both acts. Apparently the only kind of insurance subject to both acts is motor vehicle coverage. Miss. Code Secs. 5831, 5834-01(b). Hence the resignation clause of Section 1 of the Casualty Act does not. authorize the instant filing. Appellants' policies are no more than a new type of policy, in which are combined coverages for different risks constituting different kinds of insurance.

██ █ Finally, the Insurance Commission is vested with the power to "make such rules and regulations as may be necessary to carry out the provisions of this article." Code Sec. 5816. Acting upon this broad grant of rule-making power, the Commission promulgated its "Filing Requirements." Rule IV pertains to "Multiple-Line Filings." It requires that fire and extended coverage rates shall be set forth separately as an "identifiable component"; the insurer shall report to the Rating Bureau each such rate included as a component in

the policy; the company shall maintain separate premium and loss statistics upon separated fire and extended coverage portions of such premiums; and the company must pay "the customary assessments of the Mississippi State Rating Bureau, based on the applicable Fire and Extended Coverage portion of such premiums." Appellants' filing fails to comply with these rules of the Commission. They are manifestly within its delegated rule-making power.

 Appellants contend also that the State Rating Bureau has as its members the stock fire insurance companies doing business in the state, and rate making by the Bureau violates the Sherman Anti-Trust Act and the McCarran-Ferguson Act. 15 U. S. C. A., Secs. 1, 2; 15 U. S. C. A., Sec. 1013 (b). However, the fire premium rates are not fixed by insurance companies or the Rating Bureau, but are made and promulgated by the Insurance Commission of Mississippi. Miss. Code Secs. 5816, 5819. The Rating Bureau only reports and recommends. The Commission is discharging a state, governmental function, legislative in nature, in the fixing of rates for fire insurance premiums. The Federal anti-trust laws are applicable to private actions, not to those of a state exercising a governmental function. Parker v. Brown, 317 U. S. 341, 63 S. Ct. 307, 87 L. Ed. 315, 325-327 (1942).

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.